# HOLLOWAY v. KANSAS CITY, Appellant.

Division Two, July 16, 1904.

1. **CONTRIBUTORY NEGLIGENCE: Substantial Evidence: Practice.** A claim that under plaintiff's evidence she was guilty of such contributory negligence as bars a recovery means that there was no substantial evidence to sustain the verdict, and in determining whether there was such substantial evidence the court will not consider defendant's controverting evidence, but will assume plaintiff's evidence is true, and will give it every favorable inference that may reasonably and fairly be drawn from it.

2. **SIDEWALK: Duty of City: Knowledge: Presumption of Pedestrian.** A city is required to keep its sidewalks free from obstructions and reasonably safe for pedestrians, both by day and by night, and in the absence of any knowledge by the pedestrian that a plank is broken in the sidewalk or that there is a hole therein, she has the right to presume that it is reasonably safe for travel in the usual mode.

3. ———: ———: ———: **Warning.** The fact that a sidewalk "tilts" as the pedestrian steps upon it is no warning to her that a board is loose or missing or that there is a hole further on.

4. ———: ———: ———: **Dark Night.** The darkness of the night is to be considered in determining whether or not the pedestrian was guilty of contributory negligence in not discovering the dangerous condition of the sidewalk.

5. ———: ———: ———: **Assumption In Instruction.** Where there was no evidence that plaintiff had any knowledge of the existence of the hole in the sidewalk into which she fell before she stepped into it, an instruction that assumes that she did not have such knowledge is not error.

6. **EVIDENCE: Expert Testimony: Based on Plaintiff's Previous Statements.** An expert witness should not be permitted to give his opinion as to the cause of plaintiff's physical condition, based upon the previous history of her case as he learned it from her. Such statements detailed to him by her are hearsay, and the physician who learned that history from her while treating her, should not be permitted, when called as an expert witness, to base an opinion upon them as to the cause of her present physical condition.

7. ———: ———: **Cause of Injury.** It is proper to permit a physician to state that the condition of plaintiff's spine and womb could have been caused by a fall. A question that calls for such opinion is not a hypothetical one.

8. ———: **Physician: Privileged Communication: Waiver In Part.** A witness can not sever her privilege under the statute, and waive it in part and retain it in part; if she waives it at all, then it ceases to exist. And when she testifies that he examined her womb and back, and asked her about them and she told him, she waives her privilege, but such waiver should be restricted to such information as the physician acquired from her while attending her in a professional capacity, and which was necessary to enable him to prescribe for her as a physician or to do some act for her as a surgeon.

9. ———: ———: ———: ———: **Conversations About Other Matters.** Conversations about a doctor's bill or why the physician was discharged, do not come within the protection of the statute, nor is the physician incompetent to testify as to what the patient said about them or about bringing suit for damages for the injuries he was then treating, and hence the question of waiver is not involved in such conversations, for they do not relate to information necessary to enable him to prescribe for her.

10. ———: ———: ———: ———: **Contradictions.** Where plaintiff on direct examination testifies that her health prior to the accident was good, and on cross-examination, without objection, that a certain physician had treated her for headache only, she does not thereby waive her privilege to object to that physician's testifying that he had treated her for something else.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

REVERSED AND REMANDED.

*R. J. Ingraham* and *L. E. Durham* for appellant.

(1) Under the evidence of plaintiff she was guilty of such contributory negligence as to bar a recovery. For that reason the trial court should have set aside the verdict. Wheat v. St. Louis, 78 S. W. 790; Cohn v. Kansas City, 108 Mo. 387; Sindlinger v. Kansas City, 126 Mo. 315. (2) Plaintiff herself testified that she felt the walk tilt but kept going and did not look where she was stepping. Her own witnesses testified that it was light enough to see the hole in the walk a distance of half a block. In view of such evidence it was reversible error to instruct the jury that plaintiff had the right to presume that the walk was reasonably safe. Lynch v. Railroad, 112 Mo. 432; Payne v. Railroad, 129 Mo. 419; Bailey v. Railroad, 152 Mo. 461; Schepers v. Railroad, 126 Mo. 670; Myers v. City of Kansas, 108 Mo. 487; Rapp v. Railroad, 106 Mo. 428; Nixon v. Railroad, 141 Mo. 439; Moberly v. Railroad, 98 Mo. 186; Brannock v. Elmore, 114 Mo. 64. (a) By using the parenthetical clause, "in the absence of knowledge to the contrary,"

found in plaintiff's said instruction, the court told the jury that plaintiff had no knowledge of the condition of the sidewalk. In this respect the instruction assumes facts in evidence not to be true. (b) Said instruction is in direct conflict with defendant's instruction 5, relating to contributory negligence. Nixon v. Railroad, 141 Mo. 439; Weller v. Railroad, 120 Mo. 651. (3) The court erred in admitting in evidence the expert opinion of plaintiff's doctors as to the cause of her physical condition, based on the previous history of her case as they learned it from her. The correct method is to prove cause by hypothetical question based on facts in evidence. People v. Murphy, 101 N. Y. 130; Davidson v. Connell, 132 N. Y. 238; Railroad v. Shires, 108 Ill. 630; Heald v. Thing, 45 Me. 395; Railroad v. Frazier, 27 Kan. 463; U. S. v. Faulkner, 35 Fed. 730; Weatherbee v. Weatherbee, 38 Vt. 454; Greenleaf on Evidence (13 Ed.), sec. 440; Rogers on Exp. Tes. (2 Ed.), sec. 46, p. 116; Lawson on Exp. and Opin. Ev. (2 Ed.), p. 176. The physician can not relate in evidence the declarations of the patient as to her past history, but only as to "a present existing pain or malady." Ins. Co. v. Mosley, 8 Wall. 397; Railroad v. Roller, 100 Fed. 752; Hyatt v. Adams, 16 Mich. 180; Towle v. Blake, 48 N. H. 92. (4) The court erred in allowing Dr. Jones to answer the hypothetical question of plaintiff's counsel. Said question was too indefinite. Senn v. Railroad, 108 Mo. 142; Turner v. Haar, 114 Mo. 345; Smith v. Railroad, 119 Mo. 246; Russ v. Railroad, 112 Mo. 45; Smart v. Kansas City, 91 Mo. App. 586; Mammersburg v. Railroad, 62 Mo. App. 563. (5) Plaintiff's physician, Dr. Van Eman, was allowed to testify in detail as to the conversation between himself and his patient. The court properly ruled that plaintiff had waived the protection of the statute in this respect. But the court erred in refusing to allow said physician to testify as to what he found in his examination of the alleged injuries of plaintiff. The said conversation related to the nature

and extent of the injuries; the protection of the statute was consequently waived as to what the doctor saw as well as to what he said. Mellor v. Railroad, 105 Mo. 455; Webb v. Railroad, 89 Mo. App. 604; Highfill v. Railroad, 93 Mo. App. 219; Morris v. Railroad, 148 N. Y. 88; Marx v. Railroad, 56 Hun 575; Rauh v. Deutscher Verein, 29 App. (N. Y.) 483. Information communicated by a patient to a physician and information of physician gained by observation are alike privileged under the statute. The patient ought not, as in this case, to be permitted to waive the protection of the statute as to part of such information only. Gartside v. Ins. Co., 76 Mo. 446; Thompson v. Ish, 99 Mo. 160; Morris v. Railroad, 148 N. Y. 88. (6) The court erred in rejecting the testimony of Dr. Mathis. Plaintiff waived the right to have the same excluded. Rauh v. Deutscher Verein, 29 App. (N. Y.) 483; authorities cited under point 5.

*Henry J. Latshaw, Jr.,* for respondent.

(1) The general law of negligence in this State is that the court will not say plaintiff is guilty of contributory negligence unless the evidence discloses such a state of facts that reasonable minds could not honestly differ upon the question. (2) Plaintiff did not know the sidewalk was not reasonably safe, although she may have known it was not perfect. In nearly all cases of this character the plaintiff knows before he is actually injured that the sidewalk is not perfect; still, this does not preclude him from presuming that it is "reasonably safe." In the Perrette case, 162 Mo. 248, plaintiff was injured in broad daylight, about 4 p. m. Therefore, if the instruction was proper in the Perrette case, it surely was in the case at bar. This instruction has been approved in Campbell v. City of Stanberry, 78 S. W. 292, and numerous other authorities in this State.

(3)   Appellant claims that a physician in forming his opinion in regard to the ailments of his patient should not take into consideration anything the patient says to him, but should be guided solely by his own observations in examining her. In other words, that a physician should go into the sick-room, examine his patient, and then prescribe either medicine or the surgeon's knife, without basing said prescription upon any facts which he may derive from his patient.   This is the proper and inevitable deduction from appellant's argument.   The decisions seem to make a very marked distinction between the propriety of allowing an expert medical witness who examined plaintiff solely for the purpose of testifying in the case, to base his opinion upon what the plaintiff says, and those cases in which the expert witnesses have been the attending physicians of the plaintiff, and have seen her and examined her and waited upon her for a long time before the trial. There is considerable doubt as to the propriety of allowing physicians under the former condition to base their opinion upon what is said to them by the patient. Abbot v. Heath, 84 Wis. 314; Quaife v. Railroad, 48 Wis. 526. But the overwhelming weight of authority is clearly in support of the proposition that it is not only proper, but it is best, that physicians should base their opinions largely upon what the plaintiff says and does in their presence.   In fact, we think it is clear that the more thoroughly the attending physician goes into the history of the case, the more liable is his diagnosis or opinion to be right.   In considering this question it is proper to keep in view two important facts: First, that the physicians whose testimony is attacked by appellant got their history of the case directly from the plaintiff herself, and not from third parties; second, that they were the attending physicians of plaintiff during her long illness following her injury, and saw her, and prescribed for her and treated her at divers times from the date of her injury to the date of the trial.   As the statments

were made to a medical man, for the purpose of receiving .advice, they were competent and admissible. Bacon v. Charlton, 7 Cush. 581; Quaife v. Railroad, 48 Wis. 513; Aveson v. Kinnaid, 6 East 196; Palmer v. Crook, 7 Gray 418; Railroad v. Kennelly, 170 Ill. 512; Railroad v. Carr, 170 Ill. 478; Rowell v. City of Lowell, 11 Gray 420; Denton v. State, 1 Swan (Tenn.) 297; Railroad v. Talvey, 104 Ind. 409; Garfield v. Kirk, 65 Barb. 464; Joslin v. Grand Rapids, etc., Co., 53 Mich. 322; Plummer v. Ossipee, 59 N. H. 55; Davidson v. Cornell, 132 N. Y. 237; Roche v. Brooklyn, etc., Co., 105 N. Y. 294; Werely v. Persons, 28 N. Y. 345; Rogers v. Crain, 30 T. 284. (4) The evidence of Dr. Van Eman was objected to on the ground of privileged communications under section 4659, Revised Statutes 1889. Respondent says the evidence was clearly incompetent, for the following reasons: Plaintiff did not testify to any treatment the doctor gave, nor to anything the doctor did for her except that he gave her some capsules, nor to anything the doctor found, or did not find, the matter with her, nor to anything the doctor said, or did not say, was the matter with her; she did not even say why she discharged him. Plaintiff denied the conversation which Dr. Van Eman said took place between them, and which the doctor said was the cause of his discontinuing his services. The court permitted the doctor, over plaintiff's objection, to testify to that conversation. And appellant claims that since this conversation was permitted to go in evidence by the court, at appellant's request, therefore, respondent waived "in part" the protection of statute, and that she could not waive it in part and retain it in part. The answer to that contention seems to us very plain, namely: Respondent did not waive the statute in part, nor at all. This evidence went in over respondent's objections; it was appellant's witness, and it was a conversation that did not come within the purview of the statute; it was not "information necessary for the physician to enable him to pre-

scribe for such patient as a physician, or do any act for him as a surgeon.'' It was purely a conversation in regard to plaintiff's doctor bill, or in regard to the contemplated lawsuit. That is the ground upon which the trial court admitted this testimony, and it is the only ground upon which it could have been admitted. Hamilton v. Crowe, 175 Mo. 634; James v. Kansas City, 85 Mo. App. 20; Smart v. Kansas City, 91 Mo. App. 586; · Hayworth v. Railroad, 94 Mo. App. 225. (5) Appellant complains that the trial court erred in excluding the evidence of Dr. Mathis in regard to what he treated plaintiff for prior to her injury. Plaintiff objected to the doctor's testifying to what he treated plaintiff for because it was a privileged communication, etc. The objection was sustained and defendant excepted. In her direct examination plaintiff did not mention Dr. Mathis, but upon cross-examination defendant asked her to tell all the doctors that had waited upon her. She named Dr. Mathis among others. Defendant then asked her what Dr. Mathis had treated her for. She said, ''Headache, nothing else.'' Appellant says that because plaintoff answered his questions to the effect that Dr. Mathis had treated her for ''nothing else'' than headache, she waived the protection of the statute and that appellant had the right to the evidence of Dr. Mathis to contradict plaintiff. If this be true, the statute on privileged communications is a complete nullity—it is absolutely of no force or effect, for defendants can then in every instance ask the plaintiff what their doctors treated them for, and then put the doctors on the stand and ask them questions, notwithstanding the statute. Fox v. Turnpike Co., 59 App. Div. (N. Y.) 368.

BURGESS, J.—This is an action by plaintiff for ten thousand dollars damages alleged to have been sustained by her by stepping into a hole in a sidewalk in Kansas City, where one of the boards of which said sidewalk was in part constructed, was out and missing,

by reason of which she fell into said hole and was greatly injured.

The answer was a general denial and a plea of contributory negligence. Plaintiff filed reply to the answer in which is denied all affirmative allegations therein contained.

The trial resulted in a verdict and judgment for plaintiff in the sum of eight thousand dollars. Defendant appeals.

The facts as disclosed by the record are about as follows:

Between seven-thirty and eight o'clock on the night of March 25, 1900, while plaintiff was walking east upon a plank sidewalk on the north side of Independence avenue, about one hundred and eighty-five feet east of Tracy avenue, in Kansas City, Missouri, she stepped into a hole in said sidewalk, fell and sustaind the injuries complained of, said hole being caused by a board, or part of a board, being missing from the sidewalk at that point. She had never at any time prior to the accident been over or upon this sidewalk, and knew nothing of its condition at the place of the accident prior thereto. The hole had been in the sidewalk for several weeks prior to the accident, during which time the sidewalk had been ''shaky'' so that it would ''spring up'' or tilt from two to fourteen inches, when a person walked upon it. From fifteen to twenty yards east of where the accident occurred it tilted from two to three feet. The authorities of the city had notice of the condition of the sidewalk, in ample time to have repaired it before the accident.

Underneath the sidewalk at the point of accident the ground was from three to four feet below the sidewalk. Independence avenue was at the time of the accident much used by pedestrians both by day and by night.

It was about dark at the time plaintiff stepped into the hole. She went in up between the knee and the

hip, striking the lower part of her back against the edges of the walk or the stringers in consequence of which there was evidence tending to show she was seriously injured. She was assisted in getting out of the hole, and home, by a man and woman who were passing by. Upon her arrival at the home she immediately sent for Dr. Van Eman, who responded to the call. He called again the next day, and again on the third day. She then discharged him and called in Dr. Brummel Jones who attended her regularly with Dr. Regan (who was called in about the middle of May), up to the time of the trial of this case.

Such other facts as may be thought necessary to an understanding and decision of the case will be referred to in course of the opinion.

Defendant claims that under the evidence of plaintiff she was guilty of such contributory negligence as to bar a recovery, and, for that reason, the trial court should have set aside the verdict upon the motion of the defendant. With respect to the accident and how it occurred plaintiff testified that she was going east on Independence avenue, a board sidwalk, and, as she stepped on the sidewalk, it "kinder tilted just a little," but that she did not pay much attention to it and went over it, and as she was going over, she kept going and down she went, and after that she didn't know anything until the colored fellow spoke. She didn't know how long she laid there. It might have been five seconds or five minutes, she didn't know. That she fell in a hole in the sidewalk, which she had never seen; that she had never walked over this sidewalk before. That it was very dark all along there. That she did not see the hole at all before she stepped into it, and that if she had seen it she would not have stepped into it; that she never thought of such a thing as looking. Plaintiff stepped upon the sidewalk fifteen or twenty feet west of the hole. It is insisted by defendant that these facts show that plaintiff was guilty of negligence directly contrib-

uting to her injury and this being the case she can not recover in this action.

It is true there was evidence tending to show that the night was not dark, and that plaintiff could have seen the hole in the sidewalk in time to have avoided the injury had she been looking, but the question before us now is as to whether or not there was any substantial evidence to sustain the verdict, and in determining that question the court will not consider defendant's controverting evidence, but will assume that plaintiff's evidence is true, and will give to it every favorable inference which may be reasonably and fairly drawn from it. [Cohn v. Kansas City, 108 Mo. 387.]

A city is required to keep its sidewalks free from obstructions and reasonably safe for pedestrians, either by day or by night, and in the absence of any knowledge upon the part of plaintiff of the hole in question and of its dangerous condition, before the accident, she had the right to presume that it was reasonably safe for travel in the usual mode, and the fact that the walk "tilted" with her when she stepped upon it, was no warning of its dangerous condition at the place where she was hurt.

Moreover, she testified that the night was very dark and that there were no lights there in order to enable her to discover the condition of the walk. She was not, therefore, under the circumstances guilty of contributory negligence.

It is said for defendant that plaintiff herself testified that she felt the walk "tilt" but kept going, and did not look where she was stepping, when her own witnesses testified that it was light enough to see the hole in the walk a distance of half a block, and in view of such evidence it was reversible error to instruct the jury that plaintiff had the right to presume that the walk was reasonably safe.

What she did state with respect to the movement of the sidewalk was that when she stepped upon the

sidewalk "it kinder tilted just a little," by which she evidently meant slightly, and not to such an extent as to indicate to her that the hole existed into which she fell.

Plaintiff's witnesses who testified that it was light enough to see the hole in the walk a distance of half a block, were located at different points from where she was at the time she stepped in the hole, and it can not, therefore, be inferred from their testimony that she either saw it, or by the exercise of ordinary care might have seen it before stepping into it. Moreover, on the day of the accident, March 25, 1900, the sun set at sixteen minutes after six o'clock, and as the accident occurred between seven-thirty and eight p. m., it was from one hour and fourteen minutes to one hour and forty-four minutes after the sun set when plaintiff was injured, and must have been dark, or at least practically so. Under such circumstances knowledge by plaintiff of the existence of the hole before she stepped into it can not be imputed to her.

There was, therefore, no evidence that plaintiff had any knowledge of the existence of the hole before she stepped into it, and plaintiff's first instruction was not erroneous in assuming that she did not have such notice. [Perrette v. Kansas City, 162 Mo. 238.]

Nor do we think there is any conflict between the instruction under consideration and defendant's fifth instruction relating to contributory negligence.

It is insisted that the court erred in admitting in evidence the expert opinion of plaintiff's doctors as to the cause of her physical condition, based on the previous history of her case as they learned it from her; that the correct method is to prove cause by hypothetical questions based upon facts in evidence.

That the opinion of an expert witness is permissible when based upon his personal knowledge of the matter under investigation, or upon competent evidence in the case or upon both is well settled, but the question before us is, whether a physician who testifies as an

expert should be allowed to express his expert opinion based upon the previous history of the patient as he learned it from her personally in consultation with her in respect to her ailments. Plaintiff's physicians who were introduced as expert witnesses testified that they could not give their opinion as experts without basing it in part at least upon the previous history of the case as derived from her. But what that previous history was, is not disclosed by the record. Dr. Jones, one of plaintiff's expert witnesses, testified over the objection of defendant from the history of her injury learned from her, and a personal examination of her person, what his conclusions were.

Plaintiff contends that the court did not err in allowing the physicians who attended plaintiff during her troubles from these injuries to testify as to what ailments plaintiff was suffering with, their extent and probable duration, because said physicians in forming their opinions upon said points took into consideration the "history of the case" as detailed to them by the plaintiff herself.

Plaintiff cites a number of authorities which seem to sustain her contention. Thus it is said in Watson on Damages for Personal Injuries, sec. 605, p. 723, that: "A medical expert may form and express an opinion of the nature of the malady or injuries of an ill or injured person, based in part upon the statements and complaints made by the patient in relation to his condition, sufferings or symptoms at the time, in the course of a professional examination into his case."

When a physician is called as an expert "he may base his opinions upon a statement given by the patient in relation to his condition and sensations, *past* and *present*. Thus only can the expert ascertain the condition of the party; and he may of course be guided to some extent by the data thus furnished." [2 Jones on the Law of Evidence, sec. 352.]

In Railroad v. Sutton, 42 Ill. 438, it is said:

"A physician, when asked to give his opinion as to the cause of a patient's condition at a particular time, must necessarily, in forming his opinion, be, to some extent, guided by what the sick person may have told him, in detailing his pains and sufferings. This is unavoidable, and not only the opinion of the expert, founded in part upon such data, is receivable in evidence, but he may state what his patient said, in describing his bodily condition, if said under circumstances which free it from all suspicion of being spoken with reference to future litigation, and give it the character of *res gestae*."

In City of Salem v. Webster, 95 Ill. App. 120, it is said: "Certain physicians and surgeons, who had treated appellee for his injuries, in course of testifying as to his condition and the course of treatment prescribed, were allowed to state, over appellant's objections, what appellee at such times told them in describing his bodily condition. Some of these instances were after the commencement of this suit, but they were all made to appellee's physicians during actual treatment and in direct connection therewith, and there is nothing in this record to justify any reasonable suspicion of improper motive or bad faith on the part of appellee on any of these occasions. When such statements are made to a physician during treatment and in connection therewith, the mere fact of pending litigation does not render them incompetent."

While this case was afterwards affirmed by the Supreme Court in 192 Ill. 369 (l. c. 371), it was expressly said:

"Objections were also made and overruled to the testimony of physicians as to what plaintiff said to them while being examined and treated, in describing his feelings and detailing the nature and location of his pains and sufferings. As to such matters the opinions of the physicians must necessarily be formed and guided by statements of the patient, and the evidence

was within the rule laid down in Railroad v. Sutton,
42 Ill. 438, and Railroad v.-Carr, 170 Id. 478.   There
was no error in those rulings.   One of these physicians
was near by when the accident happened, and, with an-
other person, picked the plaintiff up and carried him
to his house.   He was allowed to state that plaintiff
at that time cried out with pain and described the pain
in his back.   What was stated was not a recital of any
past event but the natural expressions of suffering. The
physician took plaintiff right into his own house, close
by, and immediately administered to him as a physician.
The physician heard the accident and was at the spot
almost immediately, and was guided by the groans of
plaintiff to the place where he lay.   The evidence was
admissible as the natural expressions of suffering if
not as a part of the *res gestae.*   Some other evidence
admitted comes under the same rule as to natural ex-
pressions and appearances.''

In Louisville, etc. v. Snyder, 117 Ind. 435, the court
says: ''Dr. Bowles, an expert witness called by the
appellant, gave an opinion as to the nature and extent
of the injury sustained by the appellee, and on cross-
examination it was developed that his testimony was in
part based on statements made to him by the appellee.
Waiving all questions of practice, and deciding the ap-
pellant's motion to strike out, as if it were properly re-
stricted to the alleged incompetent part of the testimony,
we have no hesitation in deciding that the trial court
did right in overruling the motion.   As we have often
decided, the physical organs of a human being can not
be inspected by eyes of a surgeon, and the statements
of the sufferer must, of necessity, be taken by the sur-
geon.''

In Roosa v. Boston Loan Co., 132 Mass. 439, the
court says: ''The statements of a patient to a physician
of his pain and suffering, and in regard to his bodily
condition, are competent to enable him to form an opin-

ion as to the extent and nature of his injuries; but it was not competent for a physician to testify to the plaintiff's statements as to the specific cause of the injury, that being one of the issues before the jury."

In Barber v. Merriam, 11 Allen 322, the court says:

"The opinion of a surgeon or physician is necessarily formed in part on the statements of his patient, describing his conditions and symptoms and the causes which have led to the injury or disease under which he appears to be suffering. This opinion is clearly competent as coming from an expert. But it is obvious that it would be unreasonable, if not absurd, to receive the opinion in evidence, and at the same time to shut out the reasons and grounds on which it is founded. Such a course of practice would take from the consideration of a court and jury the means of determining whether the judgment of the expert was sound and his opinions well founded and satisfactory. . . . The party producing the witness and who relies upon his opinion should be allowed the privilege of showing that his testimony as an expert is the result of due inquiry and investigation into the condition and symptoms of the patient, both past and present. . , . The existence of many bodily sensations and ailments which go to make up the symptoms of disease or injury can be known only to the person who experiences them. It is the statement and description of these which enter into and form part of the facts on which the opinion of an expert as to the conditions of health or disease is founded."

Later on in the opinion it is said:

"It is suggested, in behalf of the defendant, that the statements in the present case were made by plaintiff after the commencement of this action. But we do not think for that reason only they ought to have been rejected. It was a circumstance which may have detracted from the weight of the evidence of the opinion of the physician, so far as it was founded on these statements. But as the statements were made to a medi-

cal man and for the purpose of receiving advice, they were competent and admissible.''

A careful reading of these decisions will show that they are all, with perhaps the exception of the Roosa case, predicated upon statements made by the patient during treatment or by some person undergoing examination with respect to his or her condition, pain and suffering and its location, and the expert witness might in part take them into consideration in expressing his opinion as such expert as the natural expressions of suffering, if not as a part of the *res gestae.*

But in the case of People v. Murphy, 101 N. Y. 126, a physician called as an expert witness was allowed to give his opinion as to the physical condition of a woman then upon trial for crime upon what he observed and upon her narrative of the facts, and it was held error. The court said:

''But, notwithstanding, the attending physician was allowed to express his opinion as a medical expert that an abortion had been produced, founding that opinion not only upon what he observed of the physical condition of the woman, but upon all her statements, and the history of the case as derived from her. The opinion of the general term concedes the error of such evidence, but insists that the opinion was founded upon her statements merely of 'the locality of the pain, the condition of the injured parts, and so on.' We understand what occurred differently. When the witness was first asked his opinion whether the birth occurred from natural or artificial causes, he inquired whether in giving his answer he would be allowed to consider the clinical history of the case as he got it from the girl's statement, to which the prosecutor replied: 'Certainly; I ask the question upon the whole history of the case as you learned it from her, as well as from the examination.' To this the prisoner objected. The court did not at once pass upon the objection, but suggested that the physician answer first from his observation alone.

He did so answer and said: 'From my physical examination of the woman and the foetus it would lead me to believe that an abortion had been induced,' and then added as a reason, that natural miscarriages were not likely to occur at that stage of pregnancy with the frequency of earlier stages. How weak this evidence was upon the vital point, whether the miscarriage arose from natural or artificial causes, was made apparent on the cross-examination, where, in answer to the distinct question 'whether or not from such physical examination as you describe you made there, is it possible, as a matter of medical knowledge, science and experience, to say that a miscarriage had been produced,' the witness felt constrained to answer, 'No, sir.' The prosecutor, apparently feeling the need of adding some decisive force to the opinion, followed his first inquiry with this question: 'On the personal examination that you made of the woman and the foetus, and the history of the case as you got it from her, what do you say now as to whether or not there had been an abortion brought about by artificial means?' To this question the prisoner's counsel objected, as calling for hearsay and a privileged communication, and on the further ground that it involved 'the history of the case' which had not been disclosed. The district attorney offered to disclose it, and put the question, what the girl said, which was objected to and excluded. Thereupon the court overruled the objection, and the witness answered: 'I say an abortion had been produced.' It is not possible on this state of facts to say justly that by the history of the case and the girl's statement was meant only her complaints of present pain and suffering. Nothing of the kind was suggested, or pretended, or could have been understood by court or witness or jury. Indeed, on cross-examination, the witness describes what he meant by the 'clinical history of the case;' saying, 'I wrote down part of her statement, and testified to it in the police court; and that included how she came there and

what happened since she came to that house.' So that the opinion of the expert that a crime had been committed, founded upon the narrative of the woman of previous facts, which narrative was itself inadmissible and remained undisclosed, was given to the jury. Necessarily it carried with it damaging inferences of what that narrative of facts was, and drove the accused to the alternative of omitting all cross-examination as to the concealed basis of the opinion, or admitting inadmissible evidence.''

Again in the case of Heald v. Thing, 45 Me. 395, the court held as follows:

''But in this case, while it is admitted that the declarations above referred to were properly excluded, it is strenuously contended that an opinion based wholly upon them (for the witness was permitted to give his opinion based upon his own examination and observation), should go to the jury as competent evidence, upon which they would be authorized to act, on the ground that the witness, being a person of skill, is authorized to determine the proper sources, in connection with his personal examination, from which to derive those opinions. The proposition contains two fundamental errors: First, it makes the witness decide the question of the competency of evidence, thus putting him in the place of the court. Next, while it excludes the declarations as incompetent testimony to go to the jury, it receives, as competent evidence, an opinion based upon that incompetent testimony, thus attempting to elevate the stream above the fountain, to make a corrupt tree bring forth good fruit. The declarations of the nurse and wife may have been only mere inferences on their part, and on those inferences the doctor is desired to draw an inference, and this last inference, being called the opinion of an expert, is made to assume the character of competent and substantial evidence. I have not been able to find any authority to sustain such propositions.''

In the case of Railroad v. Shires, 108 Ill. 630, the physician was allowed to base his opinion on the history of the case given to him in the consultation room by associate physicians; the court held this error, using the following language:

"It is also contended by counsel for appellant that the court erred in refusing to permit Dr. Hunter to testify to the following question: 'Please state what, in your judgment as a physician, is the present malady of the plaintiff, according to the symptoms as given by Dr. Tillottson.' The witness had stated that he had heard Dr. Tillottson's testimony, and also that the doctor had made a statement of the case to him on the day before. The question put to the witness did not call for his opinion on the testimony of Dr. Tillottson, as given on the trial, but according to the symptoms given by the doctor, which included statements as well, made on the previous day. We are not aware that it has ever been held that a medical expert has the right to testify to an opinion formed upon information derived from private conversations with witnesses in the case, and we are not inclined to adopt a rule of that character."

It is to be noted that the physicians can not relate in evidence the previous history. The court, in Davidson v. Cornell, 132 N. Y. 238, says:

"In the present case the declarations in question of the plaintiff were not instinctive nor were they made to the physician with a view to medical treatment. They consisted not of exclamation of present pain or suffering, but were the plaintiff's statements so far as called for by the doctor of the effect upon him of the injury and the consequences which had followed in such respects from the time it occurred, a period of nearly fifteen months. This was hearsay, and is very different from that of a medical witness as to the expressions by a patient or person suffering from injury or disease, indicating pain or distress or expressive of the present

state of his feelings in that respect. We think the reception of the evidence was error. And although the plaintiff testified to the truth of the statements made to the doctor his evidence did not cure the error. The character of his injury was an important fact as bearing upon the question of damages. And although his evidence may have constituted the basis in part at least of a hypothetical question for the opinion of the doctor, it can not be said that the evidence given by the latter of the plaintiff's declarations were not prejudicial to the defendants. The plaintiff's interest as a party presented the question of his credibility for the jury, and his evidence could not properly be corroborated by proving that the facts to which he testified corresponded with the declarations made by him to the doctor. This for the support to the plaintiff's evidence was not admissible. [Robb v. Hackley, 23 Wend. 50; Reed v. Railroad, 45 N. Y. 574.]''

A leading case on this point is Insurance Co. v. Mosley, 8 Wall. 397. The court holds in that case that the physicians can only give in evidence the declarations of patient as to ''a present existing pain or malady.''

The statements of plaintiff with respect to her past physical condition were mere hearsay, and should not have been considered by the expert in expressing his opinion as a witness as to her physical condition at the time of the trial. The decided weight of authority and the better reason we think supports this contention. It follows that the court committed error in allowing the expert witnesses to give their opinions based upon the history of plaintiff as they learned it from her in diagnosing her case, or while treating her.

It is also insisted by defendant that the court erred in allowing Dr. Jones to answer a hypothetical question. The question was, ''These conditions that you found in this lady's spine and womb and nervous system, could this condition, or any of them, or all of them, have been caused by a shock, a fall?'' and the objection

was, ''We object to that question as not being broad enough and not stating a hypothetical question, and placing the facts in evidence.'' Plaintiff concedes that the question was not an hypothetical question, and was not intended to be. It is clear that the question *was not* an hypothetical one, hence the objection was not placed upon proper grounds. But the question not being a hypothetical one was proper in the form in which it was put.

In Commonwealth v. Piper, 120 Mass. 185, it was said:

''The testimony of Drs. Cotting, Cheever and Foye was properly admitted. All of these witnesses were present at the autopsy of the murdered child and examined her head, and no question was made as to their competency as medical experts. The only part of the testimony objected to at the trial was that to the effect that in their opinion the injuries to the head could not have been produced at the same time and by one blow. This subject was within the range of the experience of medical experts accustomed to observe the effect of blows upon the human head, and was one upon which their judgment would aid the jury. No exception lies to the admission of the testimony.''

This contention is we think without merit.

Defendant also contends that the court erred in sustaining plaintiff's objection to the evidence of Dr. Van Eman, the physician who attended plaintiff in his professional capacity for three days after her injury. The evidence of this witness was objected to upon the ground of privileged communications, under section 4659, Revised Statutes 1899.

The record discloses that plaintiff testified that when Dr. Van Eman called to see her on the night she was hurt he examined her, but that she did not know that he examined her thoroughly. That he asked her questions, and asked her about it, and she told him and he examined her womb and her back. But it shows

that she did not testify to any treatment the doctor gave her other than that he gave her some capsules, nor to anything he found or did not find to be the matter with her. Upon the doctor's third visit plaintiff discharged him, and being asked upon cross-examination why she did so, replied that she did not like the way he spoke to her, and the way he did towards her. That she owed him a bill and he wanted his money and she didn't have the money to pay him, and he said a few disagreeable things, and she told him she would discontinue his services, that she didn't want him. Plaintiff then denied the conversation which Dr. Van Eman said took place between them, and which the doctor said was the cause of his discontinuing his services. The court permitted the doctor, over plaintiff's objection, to testify to that conversation. And defendant claims that, since this conversation was permitted to go in evidence by the court, at its request, therefore, plaintiff waived "in part" the protection of the statute, and that she could not waive it in part and retain it in part.

This evidence went in over plaintiff's objections; he was defendant's witness, and it was a conversation that did not come within the purview of the statute; it was not "information necessary for the physician to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." It was purely a conversation in regard to plaintiff's doctor bill or in regard to the contemplated lawsuit.

It is held in the case of James v. Kansas City, 85 Mo. App. 20, that while a physician is incompetent to testify as to the knowledge acquired in his professional capacity and which was necessary to a proper diagnosis and treatment of the case, yet such incompetency does not touch facts which are in no way necessary for that purpose.

The New York statute with respect to privileged communications is practically the same as the Missouri

statute. And in the case of Fox v. Union Turnpike Co., 59 New York App. (Supreme Court) 368, it is said:

"One Powell, a physician and surgeon, was called as a witness by defendant, and after testifying on his direct examination that he was called to treat the plaintiff on the evening of the fifteenth of November, 1896, at Ravena, being the evening of the day following the accident, he stated that he made an examination of the plaintiff, and was then asked by the defendant: 'Q. Kindly describe the examination you made in your own way?' This question was objected to by the plaintiff as incompetent; that the witness can not state what took place at the time he was called as a physician; that the facts that he obtained in prescribing for the plaintiff are inadmissible under section 834 of the Code of Civil Procedure. The court said: 'I think you are limited (on your claim that there was a waiver) to a denial of her testimony here in the court by the testimony of the physician.' To this the defendant excepted. This was followed by many questions, of which the following are samples: 'Q. Did you make a critical examination after having her undressed and parts exposed to view and touch; did you make a complete, critical and thorough examination of the parts that she complained of having pain in?' 'Q. Did you make an examination of the heart and lungs and a complete and thorough investigation to discover the existence of organic disease?' To these and similar questions the same objection was made as to the previous question, and the same ruling was made by the court. The only evidence given by plaintiff on her examination with reference to what was done and said by Dr. Powell when he was called to treat her other than the statement that he had given her internal remedies which she used, was brought out by the defendant on the cross-examination of the plaintiff, and is as follows: 'Q. What did the doctor do for you? A. He examined my back and examined me. He ordered alcohol. Q. What did he give you? A.

He gave me some medicine, that is all I can tell you; something in a glass, two or three different kinds.' The evidence sought to be obtained by the questions objected to by the plaintiff is clearly within the prohibition contained in section 834 of the Code of Civil Procedure, and unless it was expressly waived by the plaintiff, as provided by section 836 of the Code of Civil Procedure, the rulings of the court were right. The plaintiff, while on the witness stand, detailed her alleged injuries, and stated without reserve her feelings and all the alleged consequences of the injuries; but she did not attempt to give the conversation with Dr. Powell, or detail what, if anything, was done by him. The questions to Dr. Powell were not, therefore, asked for the purpose of contradicting anything the plaintiff testified she had said or done in his presence or to correct any statement by the plaintiff as to what he had done or said in her presence. The defendant contends that where the plaintiff testifies generally regarding her injuries and the treatment of the same, it is an express waiver of the prohibition contained in section 834 of the Code of Civil Procedure, and thereupon all physicians who have acquired information from her necessary to enable them to act in their professional capacity with reference to the injuries can be required to give in detail what they may have seen or heard in their confidential relations with the patient, notwithstanding the fact that the patient has purposely or otherwise refrained from giving any statement as to what occurred in the consultation room. When a patient voluntarily opens the door of the consultation room and gives a view that may have been specially arranged for the purpose, it would not be in accordance with the spirit of the statute or the interest of truth to shut the door against a view to be described by the physician, but in this case the door of the consultation room had not been opened by the plaintiff. The prohibition contained in the statute against disclosing professional information is for the

purpose of allowing greater freedom between physician and patient, and a patient should not be subject to the penalty of waiving entirely the prohibition contained in section 834 of the Code of Civil Procedure if she gives to a friend, or as a witness in an action or proceeding in court, a general statement of her injuries and the claimed consequence of the same. The plaintiff's testimony was not an express waiver in this case.''

That the plaintiff could not sever her privilege and waive it in part and retain it in part, we think clear. And if she waived it at all then it ceased to exist. That she did so waive it when she testified that Dr. Van Eman examined her, though not very thoroughly and asked her about it, and she told him, and he examined her womb and back, seems to us to be too plain for discussion, but such waiver should be restricted to such information as her doctor acquired from her while attending her in a professional character, and which information was necessary to enable him to prescribe for her as a physician, or to do some act for her as a surgeon, and it is manifest that the conversation between plaintiff and Dr. Van Eman in regard to the contemplated lawsuit, or plaintiff's doctor bill, did not come within the provision of the statute.

But we are not to be understood by these observations as meaning or intimating that Dr. Van Eman was not competent to testify as a witness to what plaintiff said to him, if anything, in regard to bringing suit against defendant for damages, and if she would go into it they would be able to fix up his bill against her. Such statements were not within the meaning of the statute under consideration.

Plaintiff testified upon her examination in chief that her general health was good, and upon cross-examination she was asked if Dr. Mathis had treated her, and what for. She replied that he had treated her for headaches, nothing else. Defendant thereafter introduced Dr. Mathis to show what he had treated her

for. Now, defendant contends that because plaintiff answered its questions to the effect that Dr. Mathis treated her for nothing else than headaches she waived the protection of the statute, and that defendant had the right to the evidence of Dr. Mathis for the purpose of contradicting her.. If defendant's position in this respect be the law, then the statute in regard to privileged communications is a failure in the purpose for which it is intended, for a party to a suit could evade it at any time where an attendant physician is introduced as an expert witness, by asking him upon cross-examination, if he had treated the party in whose behalf he testifies, if he treated such party for anything else than what may be stated by such party, and if so, by this means contradict him.

The statutes of Iowa and New York with respect to privileged communications are in all essentials like the Missouri statute, and in the former state in the case of Burgess v. Sims Drug Co., 114 Iowa 275, the facts were similar to the facts to the case at bar.

In that case defendant asked plaintiff on cross-examination if a certain physician, viz., Dr. Amos, had treated him, and what the doctor had treated him for. Plaintiff answered the questions, without objection, and then defendant offered Dr. Amos as a witness, claiming that plaintiff had waived his right under the statute by answering the questions propounded him by the defendant. The court held that plaintiff had not thereby waived his privilege under the statute, and that Dr. Amos was not competent to testify in regard to plaintiff's ailments, or his treatment of him.

The court says: "If counsel saw fit, on cross-examination, to inquire into this matter, he must be bound by the answer, and can not afterwards claim that the witness, by answering without objection, voluntarily waived the privilege."

The same rule is announced by the Supreme Court of New York in Fox v. Union Turnpike Co., supra.

There was no error in the ruling of the court upon this question.

Our conclusion is that the judgment should be reversed and the cause remanded to be tried in accordance with the views herein expressed. It is so ordered.

All concur.