## MULLIKEN v. GREER.

1. In an action of detinue, to recover two negroes. which plaintiff's wife's father had sent with her, on her marriage, to plaintiff's house, and had remained in plaintiff's possession until his wife's death, the declarations made by defendant subsequently to sending the negroes, and not made in the presence of plaintiff, are inadmissible to show the character of the sending, &c.
2. The circumstance of the slaves being sent with the daughter of defendant to plaintiff's house, on or immediately after his marriage with defendant's daughter, though not amounting to a gift, is proper evidence to go to a jury as presumptive evidence of a gift.
3. A declaration of the plaintiff under oath in another suit, nowise connected with this, that the negroes were not his, is no evidence against him in this suit; because such admission may have been made under a mistaken sense of his rights.
4. Where the evidence before the jury is nearly balanced, the court properly refuses a new trial.
5. In detinue for two negroes, the judgment should be for the separate value of each, not the joint value of both.

APPEAL from the circuit court of Pike county.

*E. Bates*, counsel for plaintiff, cited:
5 T. R. 512; Phil. Ev. 138, 202–3; Bul. N. P. 40; 4 Bibb, 35; Hen. & Mun. 127, 2 vol.; Co. Lit. 352, a.; 4 Com. Dig. 75; 3 Mo. R. 5, 38; 6 Con. R. 345.

*U. Wright*, counsel for defendant, cited:
4 Bibb, p. 4; Hen. & Mun. 3 vol. 127; 3 Mo. Dec. 464; 3 S. A. Pt. 295; 3 vol Mo. Dec. 283, 411.

TOMPKINS, Judge, delivered the opinion of the court.

Greer brought his action of detinue in the circuit court against Mulliken, and he having obtained judgment there, Mulliken appeals to this court. The evidence of the case is, that in the month of October, 1834, Greer, the plaintiff, intermarried with Patsey Mulliken, daughter of the defendant; that a few weeks after the marriage, two slaves, which were demanded in this action, were sent home with the wife to her husband's house without any

avowal of the purpose for which they were sent; that the wife lived 11 or 12 months after her marriage, when she died, leaving an infant child; that the slaves remained at the plaintiff's house, and under his control till the death of his wife. They were then removed to the house of Mulliken, the defendant, but under what circumstances they were removed, is not explained. There they have remained ever since. Before the action was brought, Greer, the plaintiff, demanded them from the defendant, and he refused to deliver them. Several witnesses were examined on the part of the plaintiff to prove that the defendant, before the marriage of his daughter with the plaintiff, had declared that he intended to give his lands to his sons, and his slaves to his daughters, four in number; and that he had allotted the slaves in question to his daughter Patsey, who afterwards intermarried with the plaintiff.

J. Sandusky, a brother-in law of the defendant, stated that, about three years ago, and before the marriage of the plaintiff with the daughter of the defendant, in conversation with the defendant about his affairs, he alluded to his ill-health, and said he intended to give his lands to his sons, and his slaves to his daughters—two slaves to each; that the defendant was then speaking of the ultimate disposition of his property; and spoke of his will, but whether of one already made, or of one then to be made, the witness did not recollect. Another witness, Dougherty, also a brother-in-law of the defendant, stated that, about the year 1832 or '33, he had a conversation with the defendant about the disposition of his estate, and the making or altering of his will, in which he stated that he had given the slaves in question to his daughter Patsey. This also was before the marriage of the plaintiff. The same witness, Dougherty, stated that in another conversation betwixt him and the defendant, which was held after the marriage of the plaintiff, Greer, with the defendant's daughter, the defendant, according to the understanding of the witness, said that he had given the property to Greer, and that Greer would do very well. Hunter, another witness, stated that about eight weeks after the marriage, he heard his mother, a sister to the defendant, chide him for giving up the slaves in question to Greer, the defendant being decrepit with palsy, and requiring the constant attention of his wife, and having but one woman slave remaining with the family; that the defendant replied he had given up a wo-

man and girl to the oldest daughter, who had married Standifer; and he would do no less by Patsey.

It was given in evidence by both parties, that the defendant is an old man, so decrepit with palsy, that he can move about but very little, and can scarcely speak audibly, unless when lying down; that at the time of the conversation first above detailed, he had a wife and seven children; that one of the children, a daughter, died just before the marriage of Greer; that he had 9 or 10 slaves, viz: a man, sickly and of very little value; three women and five or six children—all of one woman—the oldest child between ten and eleven years old; that of these he gave to his daughter, Mrs. Standifer, a woman and girl; and sent home with Mrs. Greer the woman and boy demanded by Greer in this action. Several witnesses testified that, when Greer demanded the slaves as aforesaid, Mulliken replied, " did I make you a right to them?" To which Greer answered: "you gave them to my wife, and afterwards I thought you gave them to me. Did not you send the assessor to me and say, that as you had given them to me, I must list the property and pay the taxes?" That John D. Mulliken then told his father, the defendant, not to answer; that they were trying to draw some admission from him, and that nothing more was said.

John D. Mulliken, eldest son and principal agent of his father, the defendant, testified that the defendant often conversed with him and the family on the subject of the disposition of the estate; and that his purpose, often expressed, was to give his lands to his sons, and his slaves to his daugters; that he frequently expressed his determination not to part with the title to his slaves till his death; and that he intended by his will, to settle them on his daughters and their issue, beyond the control of their husbands; and that he had executed, at different times, several different wills, one of which the witness had witten, and two others he had seen. This witness also testified that his brother-in-law, Standifer, held two negroes of his father in the same manner that Greer held the two in dispute; that some time, about April, 1835, Greer being a witness in the trial of the right of property in these slaves, held by Standifer under the defendant, Mulliken, and then claimed by Mulliken against one Allison, the plaintiff in the execution, and being asked whether old Mulliken had given him the negroes he had, replied "he had not." Two other witnesses, however, present at that trial of the right of property, testified that they had no recollection of hearing Greer

make this declaration. Testimony was then given to prove that John D. Mulliken had several times averred that his father had given the negroes in litigation to Greer. In the course of the trial, the defendant's counsel offered to prove declarations and statements made by the defendant, relative to the character of the delivery of the slaves, (whether as a gift or loan,) made by the defendant after the marriage of Greer, and before Mrs. Greer's death, but not at the time of the removal of the slaves, and not in Greer's presence. The court refused to suffer such evidence to go to the jury, and its decision was excepted to. On this testimony the following instructions were asked:

1. If the jury find from the evidence that the negroes in question, were sent to the house of the plaintiff from the house of the defendant along with his daughter (who had married the plaintiff,) on her first going home, and that they remained in the possession of the plaintiff for about a year, and till the death of his wife, these facts do not amount in law to a gift or transfer of the title to the slaves.

2. If the jury believe from the evidence that the plaintiff admitted, on his oath, that the defendant had not given to him or his wife the negroes in dispute, they ought to find for the defendant. These instructions were refused, and the decision of the court was excepted to.

The jury found the value of each slave to be five hundred and fifty dollars, and the court gave judgment in favor of the plaintiff for one thousand one hundred dollars, the joint value of the two slaves. A motion for a new trial was made and overruled. These things being assigned for error, the following points are made:

In an action of detinue, to recover two negroes, which plaintiff's wife's father had sent with her, on her marriage, to plaintiff's house, and had remained in plaintiff's possession until his wife's death, the declarations made by defendant subsequently to sending the negroes, and not made in the presence of plaintiff, are inadmissible to show the character of the sending, &c.

1. The evidence of Mulliken's declaration, after the slaves had been sent with his daughter, and before her death, was lawful and competent to show the purpose and character of the sending, and ought not to have been rejected.

2. The circuit court erred in refusing to give the instructions prayed for.

3. A new trial ought to have been granted.

4. The judgment varies from the verdict: 1. The declarations of Mulliken made subsequent to the sending of the negroes to the house of the plaintiff with his daughter, are no part of the thing then done; and not being made in the presence of Greer, and consequently not tacitly admitted by him to be true, were, I think, rightly rejected by the court.

2. Of the two instructions demanded by the defendant, the first, as it stands, ought not to have been either asked or given. The circumstance of the slaves being sent home with the daughter of the defendant and wife of the plaintiff, when she left the father's house, soon after marriage, to go to the house of the husband, most certainly does not amount to a gift or transfer of the title to the slaves, although they remained there about one year till the death of the plaintiff's wife. But the sending of the slaves at the time, and the suffering them to remain, was strong evidence from which a jury might well presume a gift, and as such only it appears to have been offered. To constitute a gift, there must be words or writing of the presentance and a delivery of the thing given. Moreover, this first instruction was framed on a partial statement of the evidence; for the plaintiff gave evidence of repeated declarations of the defendant to manifest his intentions in sending the slaves to the plaintiff's house, and in permitting them to remain.

The second instruction asked was very well refused too, as it seems to me, for the declarations of the plaintiff, made on oath, might have been made under a mistaken view of his rights, and in ignorance of the law of his case; and such mistake may be corrected as well when the statement is made on oath, as when made on any other occasion. The solemnity of the oath is calculated to cause a man to think before he speaks, but cannot inspire him with knowledge. The circuit court then, in my opinion, committed no error in refusing the two instructions.

3. The sending of the slaves home with the daughter of the defendant and wife of the plaintiff, and suffering them to remain there under the control of the son-in-law for nearly one year, was of itself very strong evidence of the intention of the defendant to give them. But the defendant declared to Dougherty, his brother-in-law, that he had given the slaves to Greer after the marriage. Hunter, another witness, also testified to a conversation held by the defendant with his sister, Mrs. Hunter, (mother of the witness,) in which the defendant justified himself for giving these negroes to Mrs. Greer, then married about eight weeks before. This court will never reverse a judgment of the circuit court for refusing a new trial, unless the evidence of the person demanding such new trial strongly preponderates. In this case it appears to me that the plaintiff's evidence is much the stronger of

AUGUST TERM, 1838.

Mulliken v. Greer.

The circumstance of the slaves being sent with the daughter of defendant to plaintiff's house, on or immediately after her marriage with defendant's daughter, though not amounting to a gift, is proper evidence to go to a jury as presumptive evidence of a gift.

A declaration of the plaintiff under oath, in another suit, nowise connected with this, that the negroes were not his, is no evidence against him in this suit, because such admission may have been made under a mistaken sense of his rights.

Where the evidence before the jury is nearly balanced, the court properly refuses a new trial.

AUGUST TERM, the two.   The circuit court then, I think, committed no
1838.    error in refusing a new trial.

Tabor, Shaw &    The fourth point should have been decided for the de-
Tatum v. Jame-   fendants; for if it so happen that one of the slaves be
son.    restored to the plaintiff and the other not, he can recover the value only of that not restored.

In detinue for     Because the judgment of the circuit court does not
two negroes, the   accord with the verdict of the jury, but is for the joint
judgment should   value of the two slaves, its judgment is reversed, and
be for the separate   this court, proceeding to give such judgment as the cir-
value of each, not   cuit court ought to have given, do adjudge that the plain-
the joint value of   tiff do recover the said slaves detained as aforesaid, or
both.    the sum of five hundred and fifty dollars for each or either of them that may not be restored, &c.