**Joseph H. WALLENDORF, Appellant,**

v.

**Frances RENSING and William Rensing, Respondents.**

No. 47213.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

Rufus Burrus, Independence, for appellant.

Richard H. Heilbron, Kansas City, for respondents.

DALTON, Judge.

Action for $25,000 damages for personal injuries sustained by plaintiff in a

collision between defendants' 1950 Buick automobile and a 1951 Ford ¾ ton pickup truck operated by plaintiff's son-in-law, Olen Kennon. Verdict and judgment were for defendants and plaintiff has appealed. Error is assigned on the admission of certain evidence and the giving of Instruction No. 6.

The collision occurred about 4 p.m., January 9, 1954, near the south edge of U.S. Highway 40, .4 of a mile east of the 71 By-Pass (Noland Road) and 224 feet east of Chapin Road. The four-lane paved highway is straight and nearly level with a slight slope to the east. It was a cloudy day, but visibility was good, the pavement dry and the highway clear of other traffic. Defendant Frances Rensing was driving the Buick automobile (owned by her and her husband) east in the south lane of the highway and collided with the right side of the Ford truck, which had been proceeding west on the highway, but had made a left turn to the south to enter a private drive on the south side of the pavement. According to plaintiff, the collision occurred when the front wheels and about half of the truck were off of the pavement.

Plaintiff's testimony further tended to show that the truck was being driven west in the north traffic lane of the highway at about 35 m. p. h. and, as it approached the drive in question, it slowed to 20 m. p. h. near two mail boxes (100 feet from the turn). The truck driver rolled down the left window, put out his hand and turned in to the westbound lane next to the center, "hugged the center line" and, when 10 feet east of the lane, with his hand still out, he turned left to cross the two eastbound lanes and enter the private drive. When the truck was 35 feet back of where the truck made its turn, plaintiff saw the Buick approaching, "just crossing Chapin Road." It didn't seem to be coming fast. The truck then "traveled 35 feet and made a left turn." About 10 feet back of the turn, the driver "pulled his hand back to make his left turn" and "turned in on the eastbound lane at about 10 miles [sic] trying to hit" the lip or raised edge of the slab. The Buick was 210 feet away and had just crossed Chapin Road, when the truck started its turn and entered the eastbound lane. The truck had two ten foot lanes to cross and then the length of the truck to get the truck off the concrete and in the clear. The truck traveled 70 feet after plaintiff first saw the Buick before the collision. Plaintiff did not see the Buick after he saw it 210 feet away. He didn't warn the truck driver or look again. "I didn't think it necessary, it looked like an awful safe place to turn, a good safe distance." Plaintiff was severely injured and unconscious for 5 or 6 days.

The driver of the truck saw the Buick approaching in the south lane at or just east of Chapin Road and, later, about 150 feet away but he did not see the Buick after he began his left turn across the center line of the highway. He had slowed to about 15 m. p. h. and crossed the center line at 10 m. p. h. He thought he was safe and paid no further attention to the Buick. "I didn't have no reason to, I thought I had a safe turn." He heard no warning from the Buick or from plaintiff.

After the collision, the truck and the automobile came to a stop 20 feet apart, just off the pavement on the south side of the highway. Both plaintiff and the truck driver were thrown out and lay unconscious on the gravel shoulder.

As admissions against interest, the plaintiff offered parts of a deposition of the defendant driver of the Buick, towit, that she was driving at 40 m. p. h., and that she first noticed danger from the truck when she was about 150 feet away. The car had 4-wheel hydraulic brakes and was in good mechanical condition. She thought she could stop the car in 100 feet or less.

There was evidence that, under the circumstances shown, at 40 m. p. h. the Buick

could be stopped in approximately 115 feet, including reaction time. It would perhaps take a little longer on the slight slope, or downgrade.

Defendants offered evidence tending to show that no hand or other signal for a left turn was given by the truck driver; that the truck made an abrupt turn to the left when it got nearly opposite the driveway; that the pickup truck began its left turn when the Buick was 55 feet away from it; that the front bumper of the truck had just reached the south edge of the pavement when the collision occurred; and that the defendant driver tried to turn to the right and applied her brakes but the left front fender of the Buick struck the right front fender of the truck. The defendant driver of the Buick had not noticed the private drive in question before the collision. She also tried to explain her prior deposition testimony as to distances saying that she didn't know distances, but only land marks. Defendants' expert witness fixed the stopping distance for the Buick at 40 m. p. h., and traveling down the east slope, at 128 feet.

The cause was submitted to the jury on defendants' alleged humanitarian negligence in failing to stop, slacken speed or change the course of the. Buick and avoid the collision and plaintiff's injuries after imminent peril arose.

Appellant assigns error on the court's action in "permitting Sergeant Smith of the highway patrol (1) to give his conclusions about 'any evidence of drinking', and (2) to relate what he had written on his report, and (3) tell what the truck driver said to him about how the accident happened, and (4) give questions and answers he had written down on his report which was in effect reading his report to the jury, all over the objection of the plaintiff and all of which was prejudicial to plaintiff, and in violation of the rules of evidence, of conclusions, hearsay and self serving."

Sergeant Samuel Smith of the State Highway Patrol came to the scene of the mentioned collision and made an immediate investigation. He was called as a witness by defendants and was asked whether he found "any evidence of drinking on the part of either party." Over an objection that the question gave "a roving commission of what might be hearsay" he answered that, "in talking to Mr. Kennon at the Independence Sanitarium I detected the odor of intoxicating liquor on his breath." A further objection that the time fixed was after the collision and after medication was overruled. Mr. Kennon was lying on a bed in the emergency room of the hospital when he had been interviewed. No prejudicial error appears in view of the answer given. Both plaintiff and witness Kennon had previously testified that about 11 a. m. of the day in question they had helped another person finish off a part of a pint bottle of whiskey. Each had been cross-examined at length about the matter before Sergeant Smith testified.

Later, Sergeant Smith was cross-examined about "smelling the odor of alcohol on Mr. Kennon's breath" and was asked if the witness was "certain about that fact." The witness replied, "I noted it on my report at that time." On objection that the witness had "no right to read what he has on his report," the court ruled that the witness could "refresh his recollection" and the witness was then told that he could refer to his report to refresh his memory. He answered: "I had written down on my report on my notes the odor of beer." No further objection or motion to strike the answer was made. Appellant now argues that "the court by his ruling and by permitting the answer to stand was putting that part of the report before the jury"; and that the effect was to permit the witness to give his "opinion and conclusion" and to convict "the driver of having odor of beer on his breath by the written report." Appellant cites cases to the effect that it is improper "to attempt to create inferences

of the substance of any opinions or conclusions contained in the report" or to admit "the contents of the report made out by the witness." Ryan v. Campbell "66" Express, Inc., Mo.Sup., 304 S.W.2d 825, 829; Pulse v. Jones, Mo.Sup., 218 S.W.2d 553, 555; Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 243; Ensminger v. Stout, Mo.App., 287 S.W.2d 400, 407 and White v. Hasburgh, Mo.App., 124 S.W.2d 560, 565. However, since the answer was not called for by the question asked, nor authorized by the court's ruling, the plaintiff should have moved to strike the objectionable answer and, not having done so, he may not complain. No prejudicial error appears from the record presented on this issue.

Did the court err in permitting Sergeant Smith to tell what the truck driver, Olen Kennon, said to him when he questioned him at the hospital? Mr. Kennon had testified that he had no conscious recollection of anything that occurred after the front wheels of his truck went up over the little shoulder, or "lip" at the south edge of the pavement, no personal knowledge from that time on. He said he regained consciousness when he was being removed from the hospital to his home.

■ Sergeant Smith was asked if he inquired "of either or both drivers their version of what happened." He said he talked to Mr. Kennon at the hospital and asked him questions and obtained answers, as to his name, age, address, occupation, employer, et cetera. Over an objection that the question called for hearsay and that the answer would be incompetent, he said he asked Mr. Kennon "what had happened at the time of the collision" and that Mr. Kennon answered: "Don't ask me, I don't remember." Appellant insists this evidence was "plain hearsay, and improper and prejudicial," and "was in effect reading his report to the jury." Other objections are also urged, but they were not made at the time and need not be considered. A reading of the record shows that the patrol report was not offered in evidence, nor read to the jury, but that the officer who had made it at the time of his investigation used it to refresh his recollection. The court approved its use for no other purpose. The alleged answer of Mr. Kennon that he did not remember what had happened *at the time of the collision* (if strictly construed) confirmed and did not impeach Mr. Kennon's testimony at the trial. Mr. Kennon was not a party to the action; and the evidence given by the witness did not directly tend to prove or disprove defendants' alleged humanitarian negligence as subsequently submitted to the jury, but the testimony as to what Mr. Kennon had said was hearsay and the evidence inadmissible. However, we do not consider this error prejudicial to plaintiff.

Appellant further contends that the court erred in "permitting Sergeant Smith to relate statements of the defendant driver (Mrs. Rensing), which were made outside the presence of the plaintiff and which were self-serving and tended to bolster the testimony of defendant driver at the trial and not what she had testified to in her deposition, and such evidence as admitted was made over the plaintiff's objection and was harmful and prejudicial to plaintiff's case."

Sergeant Smith was called as a witness for defendants prior to the time defendant Frances Rensing testified in her own behalf at the trial. The record does not show how long after the collision the sergeant arrived at the scene, but he found both cars on the south shoulder of the highway. With reference to defendant Frances Rensing, he testified: "I don't recall whether I talked to her at the scene of the accident, however, I did go to her place of business on east of the location of the scene and did obtain a statement from her at that time. That was later." The record further shows that Sergeant Smith testified as follows:

"Q. Did you also question this lady, Mrs. Rensing? A. Yes, I did.

"Q. About what had happened? A. Yes, I did.

"Q. Tell us what she told you when you asked her how the accident happened.

"Mr. Burrus: I object to that as hearsay, self-serving, improper, incompetent.

"Mr. Heilbron: It certainly is not hearsay, your Honor.

"The Court: Overruled.

"Q. (By Mr. Heilbron) You may answer. A. 'They came towards me and made a left turn right in front of me. There was no signal and I tried to miss him by going to the shoulder.'

"Mr. Burrus: I object again and ask it be stricken because it is prejudicial, I ask the Court to discharge the jury, it gives to the jury prejudicial, improper, hearsay testimony especially as to what she says, self-serving. That is absolutely wrong completely as can be.

"The Court: Overruled, note the objection, save the exception."

■ Respondent seeks to support the court's ruling on the theory that the testimony of the witness "concerning the statement made to him by defendant driver, if error, was harmless because it was merely cumulative and corroborative of other competent evidence," which was subsequently offered by the defendants. Respondent points out that the quoted statement was "identical" to the testimony subsequently given by Mrs. Rensing on her direct examination in her own behalf; that witness Pettit also testified that the truck driver gave no hand or other signal for a left turn; and that the truck made an abrupt turn when it got nearly opposite the private driveway. Respondent argues that "the information conveyed to the jury by the trooper's testimony concerning defendant's statement was available to the jury in the form of competent evidence, not objected to by appellant, at least two other times during the trial"; and that the evidence was therefore not prejudicial, even if improperly admitted. Respondent cites: Gaty v. United Railways Co., Mo.Sup., 251 S.W. 61, 64; Sullivan v. Union Electric Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97, 104; Covey v. Van Bibber, Mo.App., 311 S.W.2d 112, 116; Shouse v. Dubinsky, Mo. App., 38 S.W.2d 530, 534; Zeppenfeld v. Morgan, Mo.App., 185 S.W.2d 898, 903. The cases cited do not support the contentions urged upon us. No other self-serving evidence as to what defendant driver had said in 1954 with reference to the cause of this collision was admitted without objection. Nor was there any other evidence as to what the defendant driver said about the collision in January 1954. The evidence, therefore, was not cumulative proof of anything defendant driver had said. On the other hand, proof of her alleged statement of the same facts to the trooper in January 1954 tended to support her subsequent testimony in May 1958. It is evident that Mrs. Rensing had had a considerable time to reflect on the situation in question prior to giving the self-serving statement to Sergeant Smith at the time of his investigation. Her statement was not admissible under the res gestae rule, and it was self-serving, hearsay, inadmissible and highly prejudicial to plaintiff-appellant. Mulliken v. Greer, 5 Mo. 489, 492; Leahey v. Cass Ave. & F. G. Ry. Co., 97 Mo. 165, 172, 10 S.W. 58; McCarty v. Bishop, 231 Mo.App. 604, 102 S.W.2d 126, 130(10) (15); Weller v. Weaver, 231 Mo.App. 400, 100 S.W.2d 594, 597(10).

We need not further extend this opinion to rule the assignment of error based on the giving of Instruction No. 6. In the event of another trial the same alleged errors are not likely to re-appear, since the instruction can easily be amended to avoid the criticism leveled against it.

For the error noted in the admission of the self-serving, hearsay statements of defendant driver as made to Sergeant Smith during his investigation subsequent to the collision, the judgment is reversed and the cause remanded.

All concur.