Gladys POPE, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.

No. 47898.

Supreme Court of Missouri,

Division No. 2.

Dec. 12, 1960.

William M. Corrigan, St. Louis, for appellant.

Michael W. Hodges, and William L. Mason, Jr., St. Louis, for respondent.

NICK T. CAVE, Special Commissioner.

This is an appeal by defendant from a verdict and judgment for the plaintiff in the amount of $8,000 for personal injuries received while riding in one of defendant's

busses. The notice of appeal was filed prior to January 1, 1960, and this court has jurisdiction. Laws 1959, S.B. 7, V.A.M.S. § 477.040.

In November, 1956, plaintiff was a passenger on one of defendant's express busses in the City of St. Louis. There was a large crowd, "a standing load," and plaintiff was standing near the exit doors holding onto a seat rail. The bus came to a sudden stop and she was thrown to the floor and another passenger fell on her.

It is not claimed, on appeal, that the evidence is insufficient to make a submissible case of liability, and we will not detail such evidence. The defendant contends only that the court erred in admitting certain testimony; and that the verdict is grossly excessive.

Plaintiff was examined and treated by several doctors prior to the trial. She first went to Dr. Wentz, a chiropractor. She complained of sore muscles, headache, pain in the neck, back, right leg and foot, and a bruised hip. He gave heat treatments and massage for about 25 times and then recommended that she consult a medical doctor. On February 2, 1957, she visited Dr. Bruce Forsythe. He made an examination and sent her to Drs. Eagleton and Harting for X-rays. He prescribed medication, heat, and a board under a hard mattress. In August, 1957, he prescribed a lumbosacral brace which she has worn every day since. She visited him about 55 times and during this period he recommended that she consult Dr. Robert Lam. Dr. Lam first examined her on March 14, 1958, and she was still complaining of pain and stiffness in her back and weakness and numbness in her legs, loss of appetite, and generalized weakness. He made a thorough examination and detailed his findings, which will be discussed more fully in disposing of the question of the excessiveness of the verdict.

The specific testimony of Dr. Lam to which the defendant excepts is his statement that plaintiff "had a lumbosacral disc syndrome with irritation of the nerve roots resulting in atrophy of the muscles of the legs and diminution of the ankle jerk reflexes."

Defendant contends that this diagnosis constitutes an item of "special damage" and must be specifically pleaded; and that plaintiff's petition is not broad enough to include such an injury.

Dr. Lam explained: "A lumbosacral disc is an anatomical structure, every one has one, it is a piece of cartilage which lies between the bony bodies of vertebrae and acts * * * to absorb shock * * *. The lumbosacral is the region between the fifth lumbar and the 1st sacral area, which is the low back region."

Plaintiff's petition alleges, among other injuries, that her "back, spine, both legs, shoulders, arms, hips, abdomen and pelvis, and all organs and parts thereof were fractured, ruptured, displaced, dislocated, torn, twisted, sprained, strained, wrenched, bruised and contused and made permanently weak, stiff, sore and tender and the functional use thereof permanently impaired; * * *."

[1, 2] It may be conceded that plaintiff's allegation in this respect is quite broad and comprehensive, but it does include the back and spine and all organs and parts thereof. We think it is common knowledge that the lumbosacral is a part of the back and spine and that a disc is part of the spine. Dr. Lam so testified. In Rockenstein v. Rogers, 326 Mo. 468, 31 S.W.2d 792, 801 [18–19], this court held that a petition alleging injuries quite similar to the allegations in the instant petition was broad enough to permit the introduction of evidence concerning an injury to the "sacroiliac joint." We said, "It is a matter of almost common lay knowledge that the sacroiliac joint, anatomically speaking, is a part of the back."

We have examined Ziervogel v. Royal Packing Co., Mo.App., 225 S.W.2d 798, cited by defendant, and it announces the correct general rule; but the facts make

it inapplicable. We hold the court did not err in admitting the above testimony.

Defendant's next contention is that the court erred in permitting Dr. Forsythe to testify that plaintiff in giving him a history of her injuries, stated how the accident occurred. The portion of the history objected to is, "Mrs. Pope told me that on November 27, 1956, she was thrown to the floor by the sudden stopping of a bus in which she was riding."

■ The rule is that a physician, in stating his expert opinion on a patient's condition, may not testify to statements of the patient with respect to the circumstances surrounding the injuries or the manner in which the injuries were received. Holmes v. Terminal Railroad Ass'n, 363 Mo. 1178, 257 S.W.2d 922, 927. However, in this case, the plaintiff and several witnesses had testified that the bus stopped suddenly and that plaintiff and others were thrown to the floor. Defendant's driver said he had to stop the bus "a little quicker than a normal stop" because an automobile immediately in front of the bus had come to a sudden stop. The issue of the sudden stopping of the bus and of plaintiff being thrown to the floor was not really in dispute at the trial.

■ Assuming that Dr. Forsythe's answer, above quoted, was erroneously admitted, nevertheless, we are of the opinion it was not prejudicial for the reason that the cause of the injury had been testified to in detail and was not seriously controverted during the trial. Hunter v. St. Louis Southwestern Ry. Co., Mo., 315 S.W.2d 689, 696; Huffman v. Terminal R. Ass'n of St. Louis, Mo., 281 S.W.2d 863; Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S.W.2d 780.

■ Defendant also contends that the court erred in overruling its motion for a mistrial after Dr. Forsythe had testified that the plaintiff had dizzy spells which were related to an "ear disease." He made this statement in detailing plaintiff's complaints during his examination and treatment. It shortly developed that the "ear disease" was not caused by the accident. Whereupon defendant's counsel objected to such testimony and asked that the court instruct the jury to disregard it. The court ordered such evidence stricken from the record and directed the jury to disregard it. Counsel then moved for a mistrial, which was denied. Defendant cites Jones v. Terminal R. R. Ass'n, Mo.App., 246 S.W.2d 356, 361. This case announces the general rule that where the improper evidence is so foreign to the issue and so inherently poisonous that an admonition of counsel, withdrawal of the question, or direction by the court to disregard it, cannot possibly rectify the mischief done, an appellate court should intervene notwithstanding the trial court in its discretion determined that prejudicial error did not occur. But, in that case, it was held that the court had not abused its discretion. We are of the opinion that the court did not err in the instant case. Dr. Forsythe's statement was made in answer to a general question about plaintiff's complaints and it is apparent he was not undertaking to purposely inject prejudicial testimony. Counsel should never purposely elicit improper evidence, but the record does not indicate such was done here.

■ The defendant also contends that the court erred in admitting in evidence certain portions of plaintiff's hospital record. There was no objection to the introduction of the record, but only to the reading of certain entries. The basis of the objection was that the entries were pure speculation relative to plaintiff's condition. The notations objected to are as follows: "Possible atrophy of muscle left lower extremity. * * *? HNP L3–S1 * * *? Nerve route degeneration, * * *? Muscle atrophy, * * *? Disuse. * * *? Physiologic. * * * Compensation neuroses." Adjacent to the last entry are these words: "Would prefer you not use this phrase as I believe it is unwarranted"; initialed "BTF", and it is agreed that is Dr. Forsythe. The final diagnosis entry

is: "Suspected atrophy left lower extremity of unknown *etiology* [cause or reason]. 2. Physiologic menopause."

The doctor making these entries did not testify.

Defendant argues that the entry of the "?" indicates that the doctor making the entry meant to say that he did not know with any degree of certainty what plaintiff's condition was, and therefore the entries were entirely speculative and conjectural.

With reference to the atrophy of the left leg, the hospital record shows the actual measurement of the lower extremities and that there is about one inch difference in the left leg and the right. Also, Dr. Forsythe and Dr. Lam both testified to the difference in size and described it as "atrophy."

In this state of the record, we do not believe that the appearance of the "?" and "suspected atrophy" appearing in the hospital record was prejudicial. Defendant cites Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022, and Armstrong v. Croy, Mo.App., 176 S.W.2d 852. We have considered these cases, and while they announce the correct general rule, they are clearly distinguishable on the facts.

Defendant contends that the verdict is so grossly excessive that it is obviously the result of passion and prejudice and improper conduct on the part of the jury, and a new trial should be ordered; but if not so ordered, then the verdict should be greatly reduced.

■ In reviewing the jury's findings on a contention of excessiveness of the verdict, it is the duty of the appellate court to consider the evidence of damages in the light most favorable to the plaintiff. This we shall do.

■ Plaintiff is a married woman, 47 years of age, and has worked as a secretary for the Riegel Textile Company for about 8 years. Her salary was $70 per week. She did not lose any wages as the result of her injuries, although she was in the hospital 13 days and was away from her work for about 30 days prior to the time of the trial. When plaintiff fell to the floor of the bus, she felt pain in her back, neck and foot. After leaving the bus, she walked about four blocks to her home, prepared supper for her husband, and then took a hot bath and some aspirin and went to bed. The next morning, "I had sore muscles all over my body, and my face, hands and arms were numb and I still had a severe headache. * * * Every time I would bend my head, I would get a real bad pain in my neck and I was sore between my shoulder blades and down in the middle back and lower back. * * * I still had pain in my right leg and foot." After completing her work on the day following the accident, she went to see Dr. Wentz, a chiropractor, and complained of the above pain. He made an examination and gave deep heat therapy and massaged and manipulated her neck, back and legs. After about 25 treatments during the next 3 months, plaintiff still complained of the conditions heretofore enumerated, and Dr. Wentz recommended that she see a medical doctor. On February 4, 1957, plaintiff visited Dr. Forsythe, who made a thorough examination and had X-rays taken. Her complaints were substantially the same as when she visited Dr. Wentz.

Dr. Forsythe treated her during the following two years and also had Dr. Lam and one or two other specialists examine plaintiff. At the inception of Dr. Forsythe's treatment, he recommended that she wear a steel brace at all times while she was out of bed and that she sleep with a board under a hard mattress. The brace was being worn at the time of the trial. In November, 1958, Dr. Forsythe sent the plaintiff to the hospital for treatment and further examination. She was there 13 days. In March, 1958, on the recommendation of Dr. Lam, "Buck's traction, a traction or pulling process", was applied to both of plaintiff's legs

for a period of about 10 days, at which time it was discontinued because this process aggravated plaintiff's condition instead of bringing relief.

During Dr. Forsythe's treatment, he observed some muscle atrophy in the left leg, particularly of the thigh and calf. While plaintiff was in the hospital, Dr. Forsythe asked Dr. Roulhac, a neurologic surgeon, to examine plaintiff and he recommended that a myelogram be done in aid of further diagnosis of the cause of the muscle atrophy and pains in the back. The myelogram was given and proved rather negative.

Dr. Forsythe found she had an osteoarthritic condition in the lower back, not caused by the accident, but his final diagnosis was that this condition had been substantially aggravated by plaintiff's fall in the bus. The petition pleaded this specific aggravation. There was considerable evidence relative to plaintiff's extreme nervousness and emotional upsets.

Dr. Lam examined plaintiff on March 14, 1958, at the request of Dr. Forsythe. He found muscle atrophy of the thigh and calf of the left leg. He made various tests. His final diagnosis was that the plaintiff "had a lumbosacral disc syndrome with irritation of the nerve roots resulting in atrophy of the muscles of the leg and diminution of the ankle jerk reflexes." He examined plaintiff again on September 29, 1958, and found no change in her condition and recommended to Dr. Forsythe that she be placed in the hospital for further examination and tests, and particularly to have a myelogram, and that "Buck's traction" be tried to relieve pain in the back. He also testified that there is a causal connection between the accident and plaintiff's complaints and physical condition as he found them, and that such conditions are permanent.

Plaintiff testified that prior to the accident she had been in good health; able to do all her housework; enjoyed bowling and playing softball with her children; and going out socially with her husband. But since the accident she has not been free of pain; has been extremely nervous and depressed much of the time; and cannot do much housework—has hired help for that; and cannot engage in the outside activities formerly enjoyed.

Defendant argues that in determining the reasonableness of the verdict we should disregard all the evidence relating to the "disc lesion" and injuries resulting therefrom because such injury was not specifically pleaded. We have ruled this contention against defendant.

No precise yardstick can be applied to measure the money value of personal injuries. The facts in each case must be carefully considered. However, the cases make an effort to maintain reasonable uniformity in awards for similar injuries.

We have reviewed the evidence to determine whether such evidence, viewed in the light most favorable to the judgment, affords reasonable and substantial support for that judgment or whether, as a matter of law, it is excessive. So considered, we have concluded the judgment should be affirmed. It is so ordered.

PER CURIAM.

The foregoing opinion by CAVE, Special Commissioner, is adopted as the opinion of the Court.

All concur.