John Wendell SCHEARS, Respondent,

v.

**MISSOURI PACIFIC RAILROAD COMPANY, a corporation, Appellant.**

No. 48347.

Supreme Court of Missouri,

En Banc.

March 20, 1962.

Richard H. Beeson, David P. Dabbs, Paul E. Vardeman, Jr., Robert H. Kendrick, Kansas City, for appellant.

David R. Hardy, Lane D. Bauer, Donald K. Hoel, Kansas City, S. Preston Williams, Wm. Harrison Norton, North Kansas City, for respondent Sebree, Shook, Hardy & Ottman, Kansas City, Williams & Norton, North Kansas City, of counsel.

PER CURIAM.

On November 13, 1961, Division Two of this Court adopted an opinion in this case whereby the judgment of the trial court in favor of the plaintiff-respondent was reversed and the cause remanded.

Plaintiff-respondent filed a motion for rehearing or, in the alternative, for transfer to the Court en Banc.

In a per curiam opinion, the motion for rehearing or transfer to the Court en Banc was overruled. The Court, however, transferred the case to the Court en Banc on the Court's own motion. The case was set for hearing before the Court en Banc on Wednesday, May 2, 1962.

On March 9, 1962, the plaintiff and the defendant Railroad Company filed a joint motion to remand the case to the Circuit Court of Jackson County, Missouri. It was stated in the motion that the parties had agreed upon a compromise settlement. It was further stated that the parties believed it necessary that the Court en Banc adopt the divisional opinion or retransfer the case to Division Two for disposition.

After due consideration, the Court en Banc is of the opinion that the divisional opinion as well as the per curiam should be adopted by the Court en Banc. There-fore, the following opinion and the per curiam opinion of Division Two are hereby adopted as the opinion of the Court en Banc.

All concur.

STOCKARD, Commissioner.

The Missouri Pacific Railroad Company has appealed from a judgment in the amount of $65,000 (reduced by remittitur in the trial court from the jury verdict in the amount of $85,000) in respondent's action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for personal injuries.

Appellant does not contend that a submissible case was not made. A jury could reasonably find from the competent evidence the following facts. Respondent was employed as a "carman helper-oiler" at what is known as appellant's "second train yard" at Kansas City, Missouri. He and two other employees were engaged in rolling a 55-gallon barrel of oil (weighing 425 pounds) up a ladder-type skid onto a railroad section car or what was referred to as a push car. Respondent was at one end of the barrel, another employee was at the other end, and the third employee was at the middle. Oil had leaked from barrels in the area and at the place where the work was being done the ground was oily and slick. When the barrel was being rolled up the skid respondent's foot slipped on the oily ground and he was thrown into a "twisted" position, the barrel came over onto his side of the skid, and while in the "twisted" position he gave a "heave" or "hard push" to straighten the barrel and sustained a hernia of his diaphragm.

Appellant contends that the trial court "erred in admitting hearsay testimony of plaintiff's witness, Dr. William Duncan, of the history given him by plaintiff and of plaintiff's past symptoms and treatment," and that it "further erred in permitting Dr. Duncan to testify that in his opinion plain-

tiff suffered a traumatic hernia on August 24, 1956, because said opinion was based on said hearsay statements of plaintiff." We shall set out the entire occurrence giving rise to these contentions, but we shall rule specifically only on the first.

Dr. William Duncan was not a treating doctor but examined respondent on March 18, 1960 three and one half years after the occurrence of the incident giving rise to the cause of action for the purpose of giving expert testimony at the trial. After qualification as an expert he was asked on direct examination whether "any part of your examination, in whole or part, [was] dependent upon the history of the patient" and he replied that it was. He was then asked to "give the jury the history that was given you which formed a basis in part for your diagnosis." Appellant objected to the testimony on the ground that it constituted hearsay, and after a discussion between the court and counsel, some of which was off the record, the court ruled that he would "sustain the objection as to how the accident occurred." Counsel for respondent then explained to the doctor that he "should not give any history of how the accident occurred, but you may give the history that you acted upon, other than that." The doctor stated that respondent "gave a history of an injury to his stomach and his chest" which occurred on August 24, 1956. Counsel for respondent said: "Now go ahead, Doctor. You may start with how he felt after the accident, any history that was given of that." The doctor then testified as follows: "He described a twisting, straining injury to his chest and his abdomen. He states that shortly after this he became sick to his stomach, he became very weak, cold and clammy and rather severe pain in the lower chest on the left side and the upper abdominal area. This discomfort persisted and several days later he was admitted to St. Mary's Hospital with bleeding from the intestinal tract, pain in the lower chest and left upper abdomen. He had blood transfusions. The X-ray revealed that he

had twenty per cent of his stomach into his chest cavity. He was dismissed and again admitted to St. Mary's in May of 1957 with repeated hemorrhage from his intestinal tract. The X-ray revealed at that time that the hernia was present. There was some thickening of the stomach with no evidence of ulcer. He was admitted to the Missouri Pacific Hospital where the hernia in his diaphragm was repaired on July 26, 1957. He apparently made an uneventful recovery from the surgical procedure. He was again admitted to St. Mary's Hospital on December 15, 1957 where a diagnosis was then made of a duodenal ulcer with hemorrhage from the ulcer and spasm of the stomach. There was nausea, vomiting of blood, weakness, bloody stools and fainting spells. He was dismissed and readmitted to St. Mary's Hospital on two subsequent occasions, one for influenza and one for hemorrhaging from the ulcer with bloody stools, weakness and anemia. He had an interval subsequent history of May 27, '59 when he sprained his back, with no apparent connection with his abdominal bleeding." The doctor stated that some of the above history was obtained from respondent and some was obtained from the hospital records.

The doctor then was asked by respondent's counsel to relate "any past health history that was given to you or that you got from the hospital records." Appellant "renewed" its "original objection" and was overruled. The doctor then testified: "The past history of this patient was irrelevant except that he had a previous history of indigestion and gas which he had had for some years prior to the present injury. He states however that he would go for as long as one and a half years without any pain or discomfort. He states that when he did have pain and discomfort it was due to stress and strain of business worries. He states at the time of the present injury he was having no abdominal or gastrointestinal discomforts and was symptom free for one year prior to the present injury. He states that even while

he was working at the railroad yards he had a thirty-acre farm, he was doing heavy farm chores without discomfort."

The doctor then testified to the complaints made by respondent at the time of the examination and of which appellant does not complain. The doctor subsequently testified that he made a diagnosis of respondent's condition, which was based in part on the statements made by plaintiff to him, as follows: "(H)e had a traumatic hiatus hernia * * * incurred on August 24, 1956 * * * with subsequent repair of the hernia followed by secondary complications of an active duodenal ulcer * * associated with gastritis * * * and a duodenitis, which is also an inflammation of the upper portion of the small bowel. He has recurrent episodes of gastrointestinal bleeding with symptoms of pain, nausea and discomfort in the left chest and left upper abdomen. He has bilateral inguinal hernias which could be the result of the present injury and eventually should be corrected surgically. [He also has] nervousness, apprehensiveness, quite severe, secondary to the * * * traumatic hernia. He had thickening of the pleura, which is the lining of the chest, of the left side of the chest and apparent adhesions of the pericardium or lining of the heart to the top part of the diaphragm, also secondary to his original diagnosis." The doctor further testified that "It was my opinion that the complaints of [respondent] were entirely in keeping with the nature of the injuries sustained and subsequent course of events which have happened to [him] since the injury." He then expressed the opinion that future medical treatment would be needed and that respondent was not able to resume his regular type of employment. Following the above testimony, counsel for respondent submitted to Dr. Duncan a lengthy hypothetical question in which the doctor was asked to assume as true all or substantially all of the facts previously related to him by respondent, along with many other facts, and in answer thereto the doctor stated that in his opinion respondent's

hiatus hernia was "a result of his injury as of August 24, 1956."

■ The testimony of Dr. Duncan as to what respondent told him concerning his past history and past physical conditions and the treatment received was hearsay, and appellant's objection thereto was timely and adequate. Many cases from Holloway v. Kansas City, 184 Mo. 19, 82 S.W. 89, to Hunter v. St. Louis Southwestern Railway Company, Mo.Sup., 315 S.W.2d 689, establish the rule, which we believe to be best stated in Holmes v. Terminal R. R. Ass'n of St. Louis, 363 Mo. 1178, 257 S.W. 2d 922, 926, as follows: "A physician, in stating his expert opinion on a patient's condition, may testify to what he personally observed and also to what the patient said (an exception to the hearsay rule) concerning his present, existing symptoms and complaints. However, *he may not* base his opinion upon or *testify to statements of the patient with respect to past physical conditions, circumstances surrounding the injury, or the manner in which the injury was received.*" (Italics added.) Cited in support of this statement are Evans v. Missouri Pac. R. Co., 342 Mo. 420, 116 S. W.2d 8; Corbett v. Terminal R. Ass'n, 336 Mo. 972, 82 S.W.2d 97, 102; Nagel v. Thompson, 237 Mo.App. 1061, 170 S.W.2d 416; Zarisky v. Kansas City Public Service Co., 239 Mo.App. 396, 186 S.W.2d 854; and Phares v. Century Electric Co., Mo. App., 131 S.W.2d 879. See also, Magill v. Boatmen's Bank, 288 Mo. 489, 232 S.W. 448; Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S.W.2d 780; Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674; Huffman v. Terminal Railroad Association of St. Louis, Mo. Sup., 281 S.W.2d 863; Jones v. Terminal R. R. Ass'n of St. Louis, Mo.App., 246 S. W.2d 356; Garrison v. Campbell "66" Express, Inc., Mo.App., 297 S.W.2d 22; and the cases cited in the annotations in 67 A.L.R. 10, 80 A.L.R. 1527 and 130 A.L.R. 977. We can reach no conclusion but that the admission into evidence, over the timely objection of appellant, of that testimony

of Dr. Duncan in which he recited to the jury what respondent had told him concerning his past history and past physical conditions and treatment constituted error. This leaves only the question of whether we can say this error was not prejudicial to appellant.

■ Appellant took the position throughout the trial that the accident described by respondent did not occur, and it presented evidence from which that fact could reasonably have been inferred. It also took the position that the hiatus hernia, which respondent admittedly had, was not of traumatic origin. Therefore, the previous history in the form of the hearsay statements recited to the jury by Dr. Duncan had a direct bearing on the essential and principal issue in the case, particularly when Dr. Duncan started his hearsay testimony by stating that respondent "gave a history of an injury to his stomach and chest" occurring on August 24, 1956, the date respondent claimed the accident occurred, and that respondent "described a twisting, straining injury to his chest and his abdomen," and then recited subsequent incidents and conditions all directly relating back to or stemming from said occurrence. It has uniformly been held that incompetent evidence on a material issue is presumed to be prejudicial, Holmes v. Terminal R. R. Ass'n of St. Louis, supra at p. 927, unless clearly shown to be otherwise, Zarisky v. Kansas City Public Service Co., 239 Mo.App. 396, 186 S.W.2d 854, and the burden of so showing is on the respondent. Casto v. Railway Express Co., Mo.App., 219 S.W.2d 276.

■ Respondent first asserts that in the argument portion of its brief appellant "limits the history complained of to four statements [of past physical conditions] that Dr. Duncan testified that plaintiff told him" and to a statement of the doctor as to what was revealed by an X ray. Respondent then says that "in connection with each one of the above-mentioned statements testified to by Dr. Duncan, there was

competent and admissible testimony in the case prior to Dr. Duncan's testimony." He then asserts that "defendant certainly could not have been prejudiced by Dr. Duncan's statement of this portion of the history given him by plaintiff as an aid to Dr. Duncan's understanding of the case and in evaluating plaintiff's present complaints." We do not agree that appellant has so limited its contention of error. Appellant's point referred to the entire incident. When the point is sufficient to present the issue, as it is in this case, the appellate court will read the evidence in the transcript pertaining to the entire incident whether or not that evidence is all set out verbatim in the argument portion of appellant's brief. However, the result we reach concerning the prejudicial effect of the hearsay testimony does not turn on the issue of whether plaintiff had or had not previously testified to the same previous physical conditions and treatment.

Respondent cites and relies primarily on three cases. The first is Oesterle v. Kroger Grocery & Baking Co., supra [346 Mo. 321, 141 S.W.2d 780, 782]. There the examining doctor testified concerning the conditions he found at the time of the examination, but in the preliminary interrogation he stated that "for a correct diagnosis it is necessary to have the history of the patient —a 'short history of his past life as to illnesses and accidents.'" The opinion then points out that "*He* [the doctor] *did not repeat the history he received* nor is it argued or inferred that such history was in any respect other than that included in the hypothetical question," which was based on competent evidence. (Italics added.) The contention of appellant on appeal was that "it is improper to permit in evidence an opinion based on the history of a patient's case." This court held: "It has long been settled an expert witness may base a competent opinion upon matters within his personal knowledge or observation, or upon competent evidence in the case, or upon both. Likewise it has been consistently held a physician may not base an opinion·

on the previous history of a case as received from the patient. * * * The word history as it is used covers the statements of a patient to the doctor about matters in the past, not present complaints. Such a history is within the hearsay rule and therefore is not a proper foundation for an opinion which must be based on competent evidence. If, however, the so-called 'history' is made up of facts which in themselves are competent evidence, and which are in evidence, then any objection to the use of such 'history' must fall. On the other hand, where the opinion is based partly on the facts in evidence and partly on facts related by the patient to the doctor which are not in evidence, then of course the opinion is not competent. * * * In the instant case the doctor's opinion was based on facts in evidence assembled in the hypothetical question and was competent." This case does not consider or rule on the prejudicial effect of an examining doctor reciting to the jury over proper objection hearsay statements of the plaintiff pertaining to past history and physical conditions.

Respondent next cites Huffman v. Terminal Railroad Association of St. Louis, Mo., supra, [281 S.W.2d 863, 871], and asserts that it "follows the Oesterle case and holds that it is not prejudicial error to allow doctors to testify to the history given them by the plaintiff, when such testimony is otherwise in evidence." There an examining physician testified that plaintiff complained to him of pain in the left shoulder and over the left shoulder blade and of some stiffness in the left shoulder, that if the plaintiff turned his head to the side he had some aggravation of pain in the shoulder, and that he complained of constant weakening pain in the lower part of his back, at times acute. The reported opinion does not reveal whether or not there was an objection to this testimony at the time it was given on the basis that it consisted of hearsay statements as to past physical conditions. The complaint on the appeal was that the physician "was permitted to base his opinion as an expert as to the cause of plaintiff's physical condition upon statements of plaintiff to the witness with respect to * * * past experiences of pain." The opinion then sets out the rule previously quoted from Holmes· v. Terminal R. R. Ass'n of St. Louis, supra, including the statement that the physician "may not * * * testify to statements of the patient with respect to past physical conditions." It was then held that if it be "assumed" that the facts which the doctor testified plaintiff had stated as to his physical condition in some instances referred to plaintiff's experiences in the past, the plaintiff had testified to substantially the same thing "detailed by the doctor as the bases in part of his opinion," and therefore "it would seem the objection that 'history' of previous conditions of pain was prejudicially permitted *as the basis in part of the physician's opinion* must fall." (Italics added.) This case did not consider or rule on the prejudicial effect of an examining doctor reciting hearsay statements of prior history and physical conditions over proper objection thereto.

The third case is Hunter v. St. Louis Southwestern Railway Company, supra [315 S.W.2d 689]. That case presents the precise situation as the Huffman case except that the opinion of the examining physician was expressed in a deposition and offered in evidence after the plaintiff had testified to the same past history considered by the physician in arriving at his opinion.

Whatever may be the effect of these cases, under the aggravated circumstances of this case, as to whether the admission into evidence of the *opinion* of Dr. Duncan was prejudicial, they do not hold that it is not prejudicial error for an examining physician to recite to the jury, over timely and adequate objection, the hearsay statements of the plaintiff concerning past history and past physical conditions and treatment.

■ We previously pointed out that the hearsay events recited by Dr. Duncan had a direct bearing on the principal issue in

the case and that this issue was highly contested. We do not have the situation shown in Pope v. St. Louis Public Service Company, Mo.Sup., 341 S.W.2d 123, 126, where a hearsay statement by a doctor as to what the plaintiff said was the cause of the injury was held not to be prejudicial because "the cause of the injury had been testified to in detail and was not seriously controverted during the trial." It was pointed out in United States v. Nickle, 8th Cir., 60 F.2d 372, 374, that it may fairly be assumed that one who is ill and goes to a physician for treatment will truthfully state such facts as is necessary and desirable for the physician to prescribe for him, but that there is no such inducement when one goes to a physician for the purpose of qualifying him to testify in a lawsuit. The purpose then is not to enable the doctor to effect a cure but to qualify him as a favorable witness. Thus, the valid and wholesome reason for the rule announced in the Holmes case and the others previously cited becomes quite evident. In Chicago & N. W. Ry. Co. v. Garwood, 8th Cir., 167 F.2d 848, 859, an examining doctor was permitted over objection to recite to the jury the statements of plaintiff as to his prior physical condition, and the court there said: "Since it is clear that the doctor did not examine the appellee for the purpose of effecting a cure of his injury but only to qualify himself as a favorable witness, the doctor's testimony as to the history of the case given him by appellee was inadmissible because of hearsay. [Citing cases.] The fact that the doctor's testimony repeated symptoms referred to by the appellee or other witnesses does not necessarily cure the error." Then quoting from the Nickle case, it was said: "Any one familiar with the trial of cases knows that the history of a patient, testified to by a physician, is frequently much more impressive than the same history given on the stand by the plaintiff himself." Apparently respondent's position is that the recital by the doctor of the hearsay statements was merely cumulative evidence, but in the cor-

rect sense this is not true. It was corroborative. Gough v. General Box Co., Mo. Sup., 302 S.W.2d 884, 892; Hayes v. Kansas City Southern Ry. Co., Mo.Sup., 260 S.W.2d 491; 32 C.J.S., Evidence § 1016. The admission of incompetent testimony, even though it be to the same effect as competent testimony otherwise in the case, has frequently resulted in the reversal of a judgment on the ground that it was prejudicial. See Kitchen v. Wilson, Mo.Sup., 335 S.W.2d 38; Gough v. General Box Co., supra; Stratton v. City of Kansas City, Missouri, Mo.Sup., 337 S.W.2d 927; and Wallendorf v. Rensing, Mo.Sup., 329 S.W. 2d 779.

■ As a general rule an expert witness will be permitted to state the reasons, if otherwise competent, upon which his opinion is premised. But when those reasons are based in part on hearsay, as far as the witness is concerned, the accepted and proper way to present in evidence an opinion of an expert witness is to present competent evidence of those facts from some proper source, and then submit them to the expert witness in a hypothetical question along with other relevant matter. The above general rule cannot be used as a vehicle to bring before the jury incompetent testimony, or to provide the means of improperly reciting to the jury for the purpose of emphasis incompetent corroborative testimony of essential and disputed facts or of facts directly bearing on essential and disputed issues. This is what was done in this case. We cannot determine what effect the erroneous hearsay testimony of Dr. Duncan previously set out may have had in the jury's determination of the highly contested and principal fact issues of this case, and therefore we cannot say that under the circumstances it is unlikely that the testimony was prejudicial.

■ One further contention of respondent deserves comment. He argues in his brief that Dr. Dale Bennett subsequently "testified to the extensive history given him by plaintiff without objection," and that

therefore appellant waived its objection to the recital of hearsay statements by Dr. Duncan. We note that respondent does not assert that if objection had been made the trial court would have changed its ruling on the admission of such testimony. In a similar situation this court held: "We have said that where a party has seasonably objected to evidence of a certain character by one witness and his objection is overruled, he is not required or expected to repeat his objection when testimony of the same character by another witness is offered." Holmes v. Terminal R. R. Ass'n of St. Louis, supra, at p. 926. This is particularly true when, as in this case, the trial judge heard arguments of counsel on the issue of whether the testimony was admissible and made a firm ruling based on the principle involved.

Since the cause must be remanded for a new trial, it is unnecessary to decide the numerous other questions presented, including the contention that it was error to admit into evidence the opinion of Dr. Duncan when it was expressly based in part on hearsay testimony. This is not to say that the remaining contentions of appellant are without merit. Some are based on the wording of instructions, others on the failure of evidence to support a submission or on the admission of evidence, others are based on comments made in the opening statement or in oral argument, and the last pertains to the amount of the judgment. In the event of a new trial, counsel will have the benefit of the contentions made, and if so advised may meet such objections.

For the prejudicial error previously set out the judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court en banc.

All concur.

On Motion for Rehearing

PER CURIAM.

In his motion for rehearing respondent contends that the erroneous admission of the hearsay testimony of Dr. Duncan could not have been prejudicial. His contention, in substance, is that "the doctor's *opinion* is the important thing," and that since the expression by Dr. Duncan of his opinion under the circumstances in this case was not prejudicial error under the rule of the Oesterle, Huffman and Hunter cases (cited in the principal opinion supra), "any objection to his expressing the basis therefor" obviously should fall. We expressly did not rule that the admission into evidence of the opinion of Dr. Duncan was not prejudicial under what we referred to as the aggravated circumstances of this case. In making the above contention respondent ignores the basic theory which permits the admission of an opinion of an expert witness and which excludes hearsay testimony.

As an exception to the general rule that a witness may not express an opinion, an expert witness may do so when qualified as such and when the subject matter is not of such common knowledge to invade the province of the jury. See generally, Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, and Christian v. Jeter, Mo.Sup., 287 S.W.2d 768. However, the expert witness must base his opinion on facts established by competent evidence. Craddock v. Greenberg Mercantile, Inc., Mo.Sup., 297 S.W.2d 541. When the expert witness does not have personal knowledge of those facts he must be asked, by use of the hypothetical question, to assume the truth of those facts, particularly when disputed. See De Donato v. Wells, 328 Mo. 448, 41 S.W.2d 184, 82 A.L.R. 1331; Hyman v. Great Atlantic & Pacific Tea Co., 359 Mo. 1097, 225 S.W.2d 734. If the expert witness bases an opinion upon facts, some of which are not within his personal knowledge but which are otherwise supported by competent evidence without those

facts being submitted to him in a hypothetical question, then the error is in the form of the question, not that the opinion is based on facts which are not established by competent evidence. That is the situation to which the Oesterle, Huffman and Hunter cases apply. The jury is called upon to evaluate the testimony as to the facts, and to determine what credence it will give to an expert opinion based on those facts. In this case counsel for respondent followed the incorrect procedure of requesting the expert witness to express an opinion based in part on disputed facts of which he had no personal knowledge without submitting them in a hypothetical question. But, in addition, for the obvious purpose of emphasis, counsel sought to fortify the *proof* of certain facts by having the expert witness recite to the jury facts which were completely hearsay as to him and upon which he could not possibly be subject to cross-examination.

Respondent admits in his motion for rehearing that "The fact that [he] claimed to have suffered an injury in an accident on August 24, 1956, with resulting symptoms was the whole basis of [his] case," and he further admits that there was a dispute in the evidence "as to the date and fact of an accident, and the symptoms immediately following." This is not the situation where erroneous hearsay testimony was offered to prove an immaterial fact or "a fact over which there was no real dispute." See Corley v. Andrews, Mo.App., 349 S.W.2d 395, 401; Gaines v. Schneider, Mo.App., 323 S.W.2d 401; and Pope v. St. Louis Public Service Company, Mo.Sup., 341 S.W.2d 123. But, respondent says, everything the doctor testified to was otherwise properly in evidence either because of his personal testimony or hospital records, and therefore the hearsay recital to the jury of these facts by the doctor could not possibly have been prejudicial.

The doctor testified among other things, as shown in the principal opinion, that respondent "gave a history of an injury to his stomach and his chest" which occurred on August 24, 1956, and that "he described a twisting, straining injury to his chest and abdomen." It is true that in substance respondent so testified, but of course not' in those precise words. However, this is by no means the complete story. Appellant denied that on August 24, 1956, respondent *sustained any injury while working for it,* and on cross-examination of respondent it brought out that he knew that if he sustained an injury while at work he was supposed to file a report, but that he did not at any time file any such report, and that he made no claim to appellant of an injury or an accident until more than two years after the alleged occurrence, and that was made by the filing of this lawsuit. In attempting to explain why he made no report of his injury respondent testified that it was in the summer of 1957 before he first decided that the incident with the barrel caused his physical condition, but he also testified in attempting to show the severity of his injuries that it was on the day the incident happened that he decided the barrel caused his condition. Respondent also testified that in 1955, about a year before the alleged accident, while painting a jeep he had become nauseated and sick at his stomach with cramping and vomiting. He related that in May 1957 and again in June 1957, while performing work not connected with his employment in carrying rocks and in shoveling sand, he suffered seizures in which he became nauseated and had cramping and vomiting. These symptoms are substantially the same as those described by respondent at the time of the alleged accident which he did not report to his employer and which his co-worker, who was helping to load the barrel, was not even aware had happened. This co-worker, respondent's witness, also stated that after they had moved the barrels approximately one half mile and had unloaded them respondent then mentioned that he thought he had hurt his *back,* not his chest or stomach. Respondent's testimony was not such that it would remove all possible question whether the alleged accident occurred and whether respondent's

condition resulted from that accident. After respondent presented this picture with its inconsistencies and qualifications, Dr. Duncan was called to the stand and was qualified not only as an expert witness but as one of the most outstanding specialists in his field and in the community. Then, over objection, Dr. Duncan recited to the jury that plaintiff had told him that he had in fact suffered a twisting, straining injury to his chest and abdomen on August 24, 1956, with certain immediately resulting symptoms. He then related various treatments and hospitalizations, hearsay as far as the doctor was concerned, including the hospitalization for the incident resulting from the rock carrying incident, and he recited these incidents and occurrences in such a way that it left no doubt to the hearer that everything wrong with respondent resulted from a twisting, straining injury which occurred on August 24, 1956. The hearsay story recited by Dr. Duncan consisted in substance of the most favorable facts that respondent had testified to on direct examination, but he made no mention of the facts and circumstances respondent testified to on direct and on cross-examination which tended to cast some question on his story. Dr. Duncan could not be cross-examined concerning the correctness of those facts, and this demonstrates the soundness of the rule concerning the admission of hearsay testimony. No attempt has been made to exhaust the showing of how and in what manner the hearsay testimony of Dr. Duncan was prejudicial. The above is sufficient.

In the motion for new trial respondent places substantial reliance on Corley v. Andrews, Mo.App., 349 S.W.2d 395, 401, which was published subsequent to the preparation of the principal opinion. It was there held that the fact that a doctor, testifying as an expert witness, was permitted to testify as to what plaintiff told him concerning events, complaints and symptoms occurring prior to the doctor's examination could not in that particular case be said to have been prejudicial be-cause the "evidence was cumulative merely," a phrase which we think is misleading because in some situations improper cumulative evidence can be prejudicial, and because "the testimony was offered to prove that plaintiff had suffered a myocardial infarction, a fact over which there was no real dispute." Corley v. Andrews should not be construed to extend the rule of non-prejudicial error beyond its application to the particular facts of that case.

Magill v. Boatmen's Bank, 288 Mo. 489, 232 S.W. 448, 450, 451, is particularly appropriate to this case. There error was assigned "in admitting the testimony of Dr. Fry, detailing what plaintiff said she had suffered prior to his examination of her." It was held that the "assaulted portion of Dr. Fry's testimony was erroneous and constitutes reversible error." In that case, as here, it was contended on motion for rehearing that the error "resulted in no harm to appellant, as the same facts * * * have been proven by other witnesses." In a per curiam to that case it was pointed out that the plaintiff's testimony "was not the same class of evidence sought to be shown by the testimony of Dr. Fry. In other words, the * * * testimony of plaintiff should be classed as direct evidence, while that of Dr. Fry is considered expert evidence." It was further pointed out that "when counsel introduce a noted specialist, or one standing high in his profession, the jury are expected [at least by the counsel who offers the specialist as a witness] to give his testimony full credit in passing upon plaintiff's compensation [and we add, the cause of his injury]. If it is based upon matters prohibited by law, and timely objections have been made to its introduction, it becomes the plain duty of this court to reverse and remand the cause for a new trial." If, as respondent argues, the doctor's opinion is the important thing, then there is a well-established proper procedure for getting that opinion before the jury for its consideration, but the impressive testimony of an expert witness should not be used, by the

employment of improper hearsay testimony, to bolster the proof of disputed essential facts.

Respondent's motions for rehearing and in the alternative to transfer the cause to the court en banc are overruled.